[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 23, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-12100

_____

D. C. Docket No. 00-02253 CV-AR-S

JOHNNY E. WALKER,

Plaintiff-Appellee,

versus

SOUTHERN COMPANY SERVICES, INC.,
UNUMPROVIDENT CORPORATION,

Defendants,

PROVIDENT LIFE & ACCIDENT INSURANCE CO.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 23, 2002)**

Before TJOFLAT and BIRCH, Circuit Judges, and GOLDBERG[*], Judge.

BIRCH, Circuit Judge:

In this case, we decide whether the Supreme Court's decision in <u>UNUM Life Ins. Co. of America v. Ward,</u> 526 U.S. 358, 119 S. Ct. 1380 (1999) alters the application of the savings clause of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(b)(2)(A), such that the tort of bad faith under Alabama law is now saved from preemption. At the district court, the plaintiff Walker sought to amend his complaint to add the state law tort claim. After the district court granted leave to amend, the defendant Provident Life Insurance Company ("Provident") brought this interlocutory appeal. We conclude that <u>Ward</u> did not change ERISA's preemptive effect on the Alabama law of bad faith, and REVERSE the decision of the district court.[1]

## I. BACKGROUND

Few facts are needed to resolve this appeal. Walker brought an ERISA plan

---

[*] Honorable Richard W. Goldberg, Judge, U.S. Court of International Trade, sitting by designation.

[1] While Walker's appeal was pending, we decided <u>Gilbert v. Alta Health & Life Ins. Co.</u>, in which we concluded that the Alabama law of bad faith is not saved from ERISA preemption. <u>See</u> __ F.3d __ (11th Cir. Dec. 27, 2001).

enforcement action pursuant to 29 U.S.C. § 1132(a)(1)(B), alleging that Provident failed to pay disability benefits due to him under the long term disability plan of Southern Company Services, Incorporated. After filing his complaint, Walker sought leave to add a claim: Provident's unwillingness to disperse benefits violated Alabama Code § 27-12-24, which creates liability for bad faith refusal to pay insurance claims. The district court granted Walker's motion. Provident then petitioned for interlocutory review, which was granted by our court.

## II. DISCUSSION

We review the district court's decision to grant leave to amend the pleadings for abuse of discretion. Butts v. County of Volusia, 222 F.3d 891, 892 n.2 (11th Cir. 2000). When reviewing the district court's ERISA preemption analysis, we use a de novo standard. Hall v. Blue Cross/Blue Shield of Ala., 134 F.3d 1063, 1064-65 (11th Cir. 1998).

Our preemption analysis begins with legislative intent. Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S. Ct. 1305, 1309 (1977). Congress passed ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries, . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for

3

appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). In an attempt to ensure the scheme's comprehensiveness, Congress included a preemption provision: ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).

The effect of ERISA's preemption provision is tempered by a savings clause: state laws which "regulate insurance" are not preempted. 29 U.S.C. § 1144(b)(2)(A). This clause provides that nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which regulates insurance . . . ." In this appeal, neither party disputes that the Alabama law "relates to" employee benefit plans; the question is whether the Alabama law "regulates insurance." The question, in other words, is the interpretation of the savings clause.

To determine whether a state law regulates insurance under the savings clause, we follow a two part analysis developed by the Supreme Court. First, we ask whether common sense suggests that the law regulates insurance. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740, 105 S. Ct. 2380, 2389 (1985). Under this inquiry, a law must be specifically directed toward the insurance industry; mere impact on the industry is insufficient. Pilot Life Ins. Co. v.

4

Dedeaux, 481 U.S. 41, 50, 107 S. Ct. 1549, 1554 (1987). Second, we consider whether the state law governs the "business of insurance" as defined by the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq. Metropolitan Life, 471 U.S. at 742-43, 105 S. Ct. at 2390-91. The McCarran-Ferguson Act definition is a function of three inquiries: "*first*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry." Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S. Ct. 3002, 3009 (1982).

The Supreme Court applied the Metropolitan Life framework to the state law of bad faith is Mississippi, and found that the savings clause did not apply. Dedeaux, 481 U.S. at 57, 107 S. Ct. at 1558. Our court applied the reasoning of Dedeaux to the Alabama law of bad faith in 1987. Belasco v. W.K.P. Wilson & Sons, Inc., 833 F.2d 277 (11th Cir. 1987). We determined that

> the Alabama law of bad faith appears to us to have the
> same roots 'in the general principles of . . . tort and
> contract law' as was the case in Dedeaux. The other
> factors considered by the Supreme Court in its analysis of
> the saving clause in Dedeaux are not disputed by
> plaintiffs and would apply to this case in the same
> manner as they applied to the facts in Dedeaux. We
> conclude that the saving clause does not apply in this
> case.

5

Id. at 281 (internal citations omitted); accord Amos v. Blue Cross-Blue Shield of Ala., 868 F.2d 430 (11th Cir. 1989) (per curiam).

Provident argues that Belasco and Amos dispose of this appeal.  The district court concluded otherwise, interpreting two footnotes from the Supreme Court's Ward decision to alter savings clause analysis such that the Alabama tort of bad faith is no longer preempted.[2]  In footnote six, the Ward Court acknowledged that "applying the States' varying insurance regulations creates disuniformities" for national plans in local markets, but that "'[s]uch disuniformities . . . are the inevitable result of the congressional decision to 'save' local insurance regulation.'" Ward, 526 U.S. at 376 n.6, 119 S. Ct. at 1390 (quoting Metropolitan Life, 471 U.S. at 747, 105 S. Ct. at 2393).  In the following footnote, the Ward Court remarked that the Mississippi law at issue in Dedeaux was "not specifically directed to the insurance industry and therefore not saved from ERISA preemption." Ward, 526 U.S. at 377 n.7, 119 S. Ct. at 1390.  The district court, whose position is championed for obvious reasons by Walker, reasons that these two footnotes replace the Metropolitan Life preemption test with a single inquiry:

---

[2] The order granting Walker leave to amend is explicitly based on the principles announced in Hill v. Blue Cross Blue Shield of Alabama, an earlier decision by the same district judge which addresses ERISA's preemptive effect on the Alabama law of bad faith after Ward. See Hill, 117 F. Supp.2d 1209, 1211-12 (N.D. Ala. 2000).  Although Hill is not on appeal, its logic animates the order at issue.

6

is the law at issue specifically directed to the insurance industry?[3]

Our de novo review reveals that the district court's analysis is flawed. In footnote six, the Ward Court acknowledges and sanctions the fact that laws falling under the protection of the savings clause will not be uniform across state lines. Footnote six does not address the analytical steps a court must take to reach a savings clause decision: instead, the footnote comments only on the *results* of such a decision. The calculus of Metropolitan Life is untouched.

Like footnote six, Ward's footnote seven provides commentary on preexisting law. As the Court held in Dedeaux, the common sense inquiry is satisfied only in limited circumstances: "a law must not just have an impact on the insurance industry, but must be *specifically directed toward that industry*." Dedeaux, 481 U.S. at 50, 107 S. Ct. at 1554 (emphasis added). Ward's footnote seven uses identical language, commenting that Mississippi's tort of bad faith cannot survive preemption because it is "*not specifically directed to the insurance industry*." Ward, 526 at 377 n.7, 119 S. Ct. at 1390 (emphasis added). Footnote seven merely comments on the fact that the Mississippi law failed the common

---

[3] "To this court, the only question that remains is whether Alabama's cause of action for bad faith is limited to the insurance industry." Hill, 117 F. Supp.2d at 1212. The Metropolitan Life standard was not applied.

sense test; it does not create a new standard for analyzing ERISA's savings clause.

Application of the <u>Metropolitan Life</u> standard reveals that the Alabama tort of bad faith is preempted. To begin with, the tort fails the common sense test. The Alabama law, as we have earlier held, is rooted in the common law of contract and tort. <u>Belasco</u>, 833 F.2d at 281. Such common law roots, according to the Supreme Court, make it less likely that the law regulates insurance under the common sense inquiry. <u>Dedeaux</u>, 481 U.S. at 50, 107 S. Ct. at 1554. The fact that the Alabama tort has been codified to apply specifically to the insurance industry does not erase the presence of common law roots.

Next we decide whether Alabama's tort of bad faith regulates "the business of insurance" as defined by the McCarran-Ferguson Act. With respect to the first inquiry, whether the law spreads or transfers the policyholder's risk, the Supreme Court's answer is "no." In <u>Dedeaux</u>, the Court held that the correlative tort under Mississippi law failed to achieve this goal. 481 U.S. at 50, 107 S. Ct. at 1554. Indeed, Walker does not even offer an argument on this point.

The second inquiry under the McCarran-Ferguson Act is whether the law is "an integral part of the policy relationship between the insurer and the insured." <u>Pireno</u>, 458 U.S. at 129, 102 S. Ct. at 3009. While it is unclear exactly what this factor requires, the <u>Ward</u> Court determined that it is certainly satisfied when the

8

law at issue "changes the bargain between insurer and insured." 526 U.S. at 374, 119 S. Ct. at 1389-90. In <u>Ward</u>, the notice-prejudice rule created a new contract term: the insurer must prove actual prejudice before refusing to pay a late claim. <u>Id.</u> The tort of bad faith, however, changes no contract term because the obligation of good faith is implied in every contract under Alabama law. Ala. Code § 7-1-203. As the Supreme Court observed, the effect of the law of bad faith is not on the terms of the contract but on the nature of the remedy: the tort allows a plaintiff to recover punitive damages. <u>Dedeaux</u>, 481 U.S. at 51, 107 S. Ct. at 1555. As such, the tort "is no more 'integral' to the insurer-insured relationship than any State's general contract law is integral to a contract made in that State." <u>Id.</u>

The third inquiry under McCarran-Ferguson is whether the law applies only within the insurance industry. While only applicable to insurance cases, <u>American Cast Iron Pipe Co. v. Williams</u>, 591 So.2d 854, 857 (Ala. 1991), the statute is a product of basic common law principles. <u>Belasco</u>, 833 F.2d at 281. These principles may be summoned in any breach of contract case. Thus satisfying — at best — one of the McCarran-Ferguson factors, the Alabama tort of bad faith is not saved from preemption. When the <u>Dedeaux</u> Court reached an identical end to its McCarran-Ferguson analysis, the Mississippi tort of bad faith fell outside the savings clause. 481 U.S. at 51, 57, 107 S. Ct. at 1555, 1558. True, the state law at

issue need not satisfy all three of the McCarran-Ferguson factors, <u>Ward</u>, 526 U.S. at 373-74, 119 S. Ct. at 1389, but the satisfaction of one factor will not save a state law from preemption where the common sense test is unmet.

Even if we did agree with the district court's method of analyzing the savings clause, post-<u>Ward</u> precedent in our circuit holds that ERISA preempts the Alabama tort of bad faith. <u>Butero v. Royal Maccabees Life Ins. Co.</u>, 174 F.3d 1207, 1215 (11th Cir. 1999). The decision in <u>Butero</u> is dispositive because "the law of this circuit is 'emphatic' that only the Supreme Court or this court sitting *en banc* can judicially overrule a prior panel decision." <u>Cargill v. Turpin</u>, 120 F.3d 1366, 1386 (11th Cir. 1997). Thus, <u>Butero</u>, <u>Belasco</u>, and <u>Amos</u> remain good law.

## IV. CONCLUSION

The Alabama state law of bad faith relates to employee benefits, but does not regulate insurance. Walker's claim is therefore preempted by ERISA. 29 U.S.C. § 1144(b)(2)(A). Accordingly, we REVERSE the decision of the district court and REMAND for a decision consistent with this opinion.