841 So.2d 233 (2002)
Carl D. PALMORE
v.
FIRST UNUM et al.
1010802.
Supreme Court of Alabama.
June 28, 2002.
*234 Jeff S. Daniel of Jackson & Shuttlesworth, P.C., Birmingham; David Hodge of Kuykendall & Associates, Birmingham; and Carl E. Chamblee, Jr., and William H. Weems, Jr., of Chamblee, Ennis, Weems & Malone, L.L.C., Birmingham, for plaintiff.
Henry T. Morrissette and Windy Cockrell Bitzer of Hand Arendall, L.L.C., Mobile; William J. Kayatta, Jr., of Pierce Atwood, Portland, Maine; and Mark Schmidtke of Hoeppner Wagner & Evans, L.L.P., Valparaiso, Indiana, for defendants.
Forrest S. Latta and Chad C. Marchand of Pierce, Ledyard, Latta, Wasden & Bowron, P.C., Mobile; and Joana S. Ellis of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for amicus curiae Alabama Defense Lawyers Association, in support of the defendants.
Duncan B. Blair and Frances King Quick of Lange, Simpson, Robinson & Somerville, L.L.P., Birmingham, for amici curiae Blue Cross Blue Shield of Alabama and Business Council of Alabama, in support of the defendants.
Patrick Nakamura of Nakamura, Quinn & Walls, L.L.P., Birmingham, for amici curiae Health Insurance Association of America, American Association of Health Plans, American Benefits Council, and Association of Alabama Life Insurance Companies, in support of the defendants.
HOUSTON, Justice.
The United States District Court for the Northern District of Alabama has certified the following question to this Court:
"Is the Alabama tort of bad faith, as codified in [Ala.Code 1975,] § 27-12-24, and as previously existed before its codification, a law which (a) is limited solely to insurers; and (b) constitutes a regulation of the insurance industry under Alabama law?"
We initially accepted the certified question. However, guided by an acknowledgment of the proper boundaries between state and federal courts, our analysis compels us now to decline to answer this question.
At first glance, the certified question appears to invoke an analysis purely under Alabama law; indeed, this is precisely what the plaintiffs arguethat the question should be answered without regard to the federal statutory context from which it arose. However, such an answer would be somewhat disingenuous, given the federal district court's following summarization of the relevant facts and circumstances that provide the foundation for its certified question:
"The plaintiff seeks to recover benefits arising out of and related to an ERISA welfare benefit planmore specifically a disability insurance policy issued by defendant [First] Unumthus causing the plaintiff's claim to be preempted by ERISA. However, the plaintiff also seeks punitive damages based on the defendant's alleged bad faith failure to pay.
"The plaintiff was employed by non-party Reliance Electrical Company for approximately sixteen years. Due to on the job exposure to numerous harmful substances, the plaintiff now suffers from various debilitating conditions. The plaintiff applied for and received benefits under a long term disability *235 plan. The plaintiff alleges that [First] Unum unilaterally and wrongfully canceled his benefits under the applicable disability policy in December of 2000.
"On December 27, 2001, the Eleventh Circuit Court of Appeals issued its opinion in Gilbert v. Alta Health & Life Ins. Co., [276 F.3d 1292] (11th Cir.2001), which reversed in part this court's opinion in that case, Gilbert v. Alta Health & Life Ins. Co., 122 F.Supp.2d 1267 (N.D.Ala.2000). The Gilbert opinion from the Eleventh Circuit has not yet been issued as a mandate. The court's June 29, 2001, opinion in this case was based on its opinion in Gilbert, 122 F.Supp.2d 1267.
"ERISA preempts state laws `insofar as they may ... relate to any employee benefit plan.' 29 U.S.C. § 1144(a). An `employment benefit plan' is `(1) a plan, fund or program (2) established or maintained (3) by an employer ... (4) for the purpose of providing ... benefits ... (5) to participants or their beneficiaries.' Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir.1982).
"The ERISA savings clause found in 29 U.S.C. § 1144(b)(2)(A), states: `[N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance....' Thus, the crucial question with which this and other courts have been faced is whether Alabama's tort of bad faith refusal to pay benefits, codified in § 27-12-24, Code of Alabama 1975, is a law `which regulates insurance.'"
This summarizationprovided pursuant to our procedure for submitting certified questions to this Court, see Rule 18(d), Ala. R.App. P.makes clear not only that the crux of the certified question is the interpretation of the phrase "regulates insurance," but also that any relevant analysis of the phrase necessarily involves the interpretation of a federal statute, namely, 29 U.S.C. § 1144(b)(2)(A), ERISA's savings clause.
In order for this Court to consider a certified question from a federal court, the question must be, among other things, "determinative of [the underlying] cause." Rule 18(a), Ala. R.App. P.; see Greene v. Massey, 384 So.2d 24, 27-28 (Fla.1980) (refusing to answer a certified question that would not be "determinative of the cause"); Committee Comments, Rule 18, Ala. R.App. P. (noting that "Rule 18 is based upon the Florida Appellate Rules, § 4.61 [now Fla. R.App. P. 9.150, which allows certification of a question if the `answer is determinative of the cause']"). This requirement correctly leads us to view the question presented in its proper context, lest our answer resemble an opinion on an abstract point of law irrelevant to the underlying case. See, e.g., Smith v. Alabama Dry Dock & Shipbuilding Co., 293 Ala. 644, 651, 309 So.2d 424, 429 (1975) (stating that "[i]t has long been the law of this State that courts will not decide moot, abstract or hypothetical questions"). The plaintiff's apparent suggestion that we should analyze a certified question in a vacuum is negated by the existence of Rule 18(d), which requires that a federal court's certification of a question "shall contain the style of the case [and] a statement of facts showing the nature of the cause and the circumstances out of which the questions or propositions of law arise...." Such information would be not only wholly unnecessary but also potentially corrupting if our analysis demanded complete insulation from context.
The defendants and the amici curiae argue that we should decline to answer this certified question, because no answer that we could give would be determinative of the underlying cause. We agree.
Authoritative interpretation of federal statutory language is ultimately declared by the federal courts. See, e.g., *236 Tafflin v. Levitt, 493 U.S. 455, 465, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (noting that federal courts are not bound by state court interpretations of federal civil RICO statute); Grantham v. Avondale Indus., Inc., 964 F.2d 471, 473 (5th Cir.1992) ("It is beyond cavil that we are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question."). In that respect, the United States Court of Appeals for the Eleventh Circuit has not been silent with regard to the issue before us. Relying primarily on the United States Supreme Court's decision in Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Eleventh Circuit has repeatedly (and very recently) held that, under its interpretation of the phrase "regulates insurance" as used in the ERISA savings clause (a federal statute), our tort of bad faith does not "regulate insurance" and therefore is not saved from preemption.[1]Walker v. Southern Co. Servs., Inc., 279 F.3d 1289, 1291-94 (11th Cir.2002); Gilbert v. Alta Health & Life Ins. Co., 276 F.3d 1292, 1296-1301 (11th Cir.2001); Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1215 (11th Cir. 1999); Amos v. Blue Cross-Blue Shield of Alabama, 868 F.2d 430, 431-33 (11th Cir. 1989); Belasco v. W.K.P. Wilson & Sons, Inc., 833 F.2d 277, 279-81 (11th Cir. 1987).
Furthermore, relevant to the first issue in the certified question, in the most recent of these decisions the Eleventh Circuit reaffirmed this conclusion while assuming that our tort of bad faith is "limited solely to insurers." See Walker, 279 F.3d at 1293 (stating that the tort is "only applicable to insurance cases" (citing American Cast Iron Pipe Co. v. Williams, 591 So.2d 854, 857 (Ala.1991))); Gilbert, 276 F.3d at 1297 n. 7 (noting that "Alabama ... has apparently `identified its law of bad faith with the insurance industry'" (quoting Pilot Life, 481 U.S. at 50, 107 S.Ct. 1549)).
Simply put, we are being asked either 1) to interpret federal statutory language with regard to Alabama's tort of bad faith using the relevant federal precedent (something that has already been authoritatively accomplished by the United States Court of Appeals for the Eleventh Circuit),[2] or 2) to give a meaningless "Alabama interpretation" to a phrase found in a federal statute, which would have no binding force or effect in federal court. Because either option would be an exercise in futility, it is clear that our acceptance of this question was erroneous, and we decline to answer it.[3]
QUESTION DECLINED.
MOORE, C.J., and SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part and expresses no opinion in part.
*237 JOHNSTONE, Justice (concurring in part and expressing no opinion in part).
But for one exception, I concur. The exception is that I express no opinion on footnote 1 to the main opinion, because neither Seafarers' Welfare Plan v. Dixon, 512 So.2d 53 (Ala.1987), nor Hood v. Prudential Insurance Co. of America, 522 So.2d 265 (Ala.1988), expressly discusses the precise issue of whether the Alabama tort of bad faith constitutes a "law of [Alabama] which regulates insurance" within the meaning of the ERISA savings clause, 29 U.S.C. § 1144(b)(2)(A), although a resolution of this issue may be implicit in the general holding of each of those cases that this tort is preempted by ERISA.
NOTES
[1] Applying Pilot Life, this Court reached the same conclusion in Seafarers' Welfare Plan v. Dixon, 512 So.2d 53, 54-55 (Ala.1987), and in Hood v. Prudential Insurance Co. of America, 522 So.2d 265, 266 (Ala.1988).
[2] See Pittman v. Cole, 267 F.3d 1269, 1291 (11th Cir.2001) ("When the district court formulates its questions to certify to the Alabama Supreme Court, it should not ... seek guidance from the Alabama Supreme Court on any issues of federal law.... `[A] federal court may not certify federal law issues to a state supreme court.'") (quoting Spain v. Brown & Williamson Tobacco Corp., 230 F.3d 1300, 1312 n. 16 (11th Cir.2000)).
[3] We note that general notions of comity raise an additional concern that weighs in favor of our declining to answer this certified question. As stated above, on June 29, 2001, the district court issued a memorandum opinion in this case in which it held, based upon its previous opinion in Gilbert v. Alta Health & Life Insurance Co., 122 F.Supp.2d 1267 (N.D.Ala.2000), that Alabama's tort of bad faith was not preempted by ERISA. The Eleventh Circuit reversed this holding in its Gilbert decision, which was released on December 27, 2001. On January 17, 2002, the district court certified its question to this Court, noting the reversal but stating that the Eleventh Circuit's mandate in Gilbert had not yet been released. We accepted the certified question on February 15, 2002. However, after refusing to hear the Gilbert case en banc, the Eleventh Circuit issued its mandate to the district court on March 22, 2002. The issuance of this mandate (which, of course, binds the district court) raises a serious question regarding the propriety of the outstanding certified question, which is an apparent challenge to the Eleventh Circuit. To say the least, these events place this Court in an unenviable positiona position that at least favors, if not demands, that we decline to answer the certified question.