Eddie REVELLS, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, et al., Defendants.**

No. CIV.A.02–S–558–S.

United States District Court,
M.D. Alabama,
Southern Division.

May 7, 2003.

N. Tracy Nickson, Prattville, AL, Michael Guy Holton, Pike Road, AL, for Plaintiffs.

James S. Christie, Jr., Bradley, Arant, Rose & White, LLP, Birmingham, AL, George R. Parker, Bradley, Arant, Rose & White, LLP, Montgomery, AL, Robert A. Huffaker, Richard McConnell Freeman, Jr., Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

COODY, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Eddie Revells ("Revells") filed this action in state court against defendants Wassau Insurance Company ("Wassau"), Metropolitan Life Insurance Company ("MetLife"), and Shaw Management Corporation ("Shaw") seeking payment of disability benefits pursuant to an employee welfare benefit plan offered through Revells' former employer, Georgia–Pacific Corporation, and administered initially by Wassau and subsequently by MetLife. Specifically, the plaintiff alleges state law claims of breach of contract and bad faith refusal to pay benefits based on the defendants' reduction of his disability insurance benefits resulting from the policy's social security set-off provision.

The defendants timely removed the action to this court on the basis of complete preemption by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001(1), *et seq.*, and on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Wausau Insurance Company was never served and, consequently, is not a proper party to this action. Revells and Shaw reached an amicable settlement of the claims against Shaw, and Shaw has since been dismissed as a

defendant from this action. In addition, Plaintiff's wife, Kathy Revells, was substituted as next friend and plaintiff because Eddie Revells suffered a severe mental breakdown.[1] *See* Doc. # 29.

Thus, at this juncture, MetLife is the only remaining defendant in this action. MetLife contends that because Revells is seeking payment of benefits pursuant to an employee welfare benefits plan, his claims are preempted and governed by 29 U.S.C. § 1132(a)(1)(B).[2] The court has original jurisdiction of this claim pursuant to 29 U.S.C. § 1132(e)(1) if the court determines the plaintiff's claims are preempted by ERISA or, in the alternate, diversity jurisdiction pursuant to 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

Now pending before the court is MetLife's motion for summary judgment (doc. # 13). The plaintiff has filed a response in opposition to the motion and, on February 25, 2003, the court heard oral argument on the motion. After careful review of MetLife's motion for summary judgment, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that MetLife's motion for summary judgment is due to be granted.

1. In the interest of simplicity and continuity, the court will continue to refer to Eddie Revells as the plaintiff.

2. 29 U.S.C. § 1132(a)(1)(B), allows claimants to bring a civil action to recover benefits under an ERISA plan, and provides, in pertinent part, as follows:
(a) Persons empowered to bring a civil action. A civil action may be brought-

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir.1995); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir.1995). The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claim, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie*

(1) by a participant or beneficiary-

. . . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan; ...

*Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts that are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990); *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983).

## III. FACTS

Revells was an employee of the Georgia–Pacific Corporation and participated in Georgia–Pacific's long term disability plan ("the Plan"). (Def. Shaw Ex. A, Aff. of James Shaw, ¶ 2). Wassau administered the Plan until MetLife became the Plan's administrator on January 2, 2001. *Id.*

Sometime in 1999, Revells applied for long term disability benefits under the Plan. (Def. MetLife Ex. C). On July 22, 1999, he was notified by Wassau that he "may be eligible for a variety of Social Security benefits" and Wassau "fel[t] a disability application [wa]s warranted." (Def. Shaw Ex. B). Wassau offered to assist Revells in securing Social Security benefits by referring him to Shaw, while acknowledging that his "disability insurance benefit from [them] may be reduced for Social Security Benefits [he] may receive." *Id.*

On August 4, 1999, Revells was informed that his application for long term disability insurance benefits from the Plan was approved, effective September 5, 1999. (Def. MetLife Ex. C). His benefits were calculated at 67% of his gross monthly earnings prior to becoming disabled. *Id.* This amount was subject to reduction by receipt of income from other sources including Social Security. *Id.* Wassau also notified Revells that

> [t]he Plan requires that in the sixth month of disability, Long–Term Disability Benefits will be reduced by an estimated [Social Security benefits] award amount. However, in order to waive the estimated offset of Social Security Disability Benefits, we will require that the enclosed Reimbursement agreement be signed, dated and returned to this office. This form states that you agree to pay Wassau all money due if Social Security Benefits are Awarded retroactively.

*Id.* On August 8, 1999, Revells signed and returned an "agreement to reimburse" form to Wassau in accordance with plan provisions.[3] (Def. MetLife Ex. D.)

On September 10, 1999, Shaw filed a claim for Social Security benefits on Revells' behalf. (Def. Shaw Ex. G). On December 12, 2000, Revells was awarded Social Security benefits in the amount of $1,530.00 per month, effective from October 1999 and increasing to $1,541.00 per month in January 2000. (Def. Shaw Ex.

---

**3.** By signing and returning the form, Revells "agree[d] that if [he] should receive a retroactive lump sum payment for a period during which [he] received the Benefit payable under the policy, [he] will reimburse the company an amount equal to the amount by which the Benefit would have been reduced had the Lump Sum payment been paid on a periodic, rather than a lump sum, basis." (Def. MetLife Ex. D).

H; Def. MetLife Ex. E). On March 21, 2001, MetLife notified Revells that, in accordance with the Plan, it was reducing his benefits by the amount of his monthly Social Security benefits. (Def. MetLife Ex. E).[4]

Revells filed this action on April 10, 2002.

## IV. DISCUSSION

### A. ERISA Preemption

■ The plaintiff claims that the question of whether this claim is preempted by ERISA is "a genuine issue of fact to be decided by the trier of fact." (Pl's Resp. to Def's Mot. for Summ. J., p. 4). The plaintiff further claims that whether the Plan is even an "employee welfare benefit plan" is also a question of fact to be decided by the trier of fact. *Id.* at 5. The defendant responds that because the plaintiff's claims relate to the long-term disability insurance policy issued by Georgia–Pacific, it clearly qualifies as an employee welfare benefit plan, and, thus, his claims are preempted by ERISA.

■ The court concludes in quick fashion that the plaintiff's contentions about preemption and the plan being questions of fact are specious. Whether the plaintiff's claims involve an employee welfare benefit plan, and thus, whether they are preempted by ERISA are questions of law.[5] ERISA defines an "employee welfare benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). The undisputed evidence demonstrates that the Plan was established by Georgia–Pacific to provide its employees long term disability benefits. The court concludes that the Plan constitutes an employee welfare benefit plan as defined by ERISA.

■ The court must next resolve the issue of preemption. The civil enforcement provisions of ERISA, 29 U.S.C. § 1132(a), provide the exclusive remedy available to recover benefits due under employee welfare benefit plans. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Any common law or statutory claim of a person seeking to recover ERISA plan benefits is preempted. 29 U.S.C. § 1144(a); *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Federal law completely preempts an area, converts state law claims into federal claims and provides a basis for federal jurisdiction where the state law (1) is preempted, and (2) falls within a federal enforcement scheme. *See Brown v. Conn. Gen. Life Ins. Co.,* 934 F.2d 1193, 1196 (11th Cir.

---

4. MetLife also notified Revells that he had been overpaid monthly benefits in the amount of $24,623,00 because his disability benefits under the Plan had not be reduced by estimated Social Security benefits. MetLife eventually recouped the overpayment from Revells.

5. Disputed issues of subsidiary facts hypothetically could affect the ability of the court to determine the issue of law, but no disputed issues exist here.

1991). The law is well settled that state law claims relating to ERISA-governed employee welfare benefit plans are displaced by federal law. *Id.* "The preemption provision of ERISA provides that it "shall supersede any and all state laws insofar as they may now or hereafter relate to any employment plan" covered by ERISA. *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.,* 57 F.3d 1040, 1042 (11th Cir.1995) (citing 29 U.S.C. § 1144(a) (1988)).

■■■ A claim relates to an employee welfare benefit plan if it has "a connection with or reference to such plan." *Pilot Life,* 481 U.S. at 47, 107 S.Ct. 1549. "[W]here state law claims ... are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan and its benefits system." *Variety,* 57 F.3d at 1042. "A party's state law claim "relates to" an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." *Garren v. John Hancock Mut. Life Ins. Co.,* 114 F.3d 186, 187 (11th Cir. 1997).

Revells purchased a long-term disability policy to pay 67% of his basic monthly earnings if he became disabled. In 1999, he became disabled and applied for benefits under the policy. He began receiving benefits in September 1999 and continues to receive benefits. On December 12, 2000, Revells was approved for Social Se-curity disability benefits. Thereafter, MetLife reduced his disability benefits by offsetting the amount of his Social Security disability payments against the amount of his benefits under the policy.

■■■ It is patently clear that the plaintiff's claims arise from and are related directly to the defendant's reduction of his benefits under the disability policy. Thus, "the impetus for [the plaintiff's] suit was [the defendant's] decision in its role as an ERISA entity to deny [the plaintiff's] claim for benefits under the ERISA plan." *Engelhardt v. Paul Revere Life Ins. Co.,* 139 F.3d 1346, 1353 (11th Cir.1998). The plaintiff's claims relate directly to the amount of benefits he receives under the policy and are intertwined with the defendants' reduction of benefits based on the Social Security disability benefit off-set. *See Franklin v. QHG of Gadsden, Inc.,* 127 F.3d 1024 (11th Cir.1997); *Farlow v. Union Cent. Life Ins. Co.,* 874 F.2d 791 (11th Cir.1989)[6]; *Culpepper v. Protective Life Ins. Co.,* 938 F.Supp. 794 (M.D.Ala. 1996). Thus, because the plaintiff's claims of breach of contract and bad faith denial of benefits are based upon the defendant's failure to pay benefits under Revells' disability policy, the court concludes that the plaintiff's claims relate to an ERISA-governed employee welfare benefit plan and are preempted by ERISA. *See Variety,* 57 F.3d at 1042.[7]

---

6. The court is cognizant of the fact that the Eleventh Circuit revisited their decision in *Farlow* in *Morstein v. Nat'l Ins. Services, Inc.,* 93 F.3d 715 (11th Cir.1996). While the court held the fraud claims in *Morstein* were not preempted, the instant case is distinguishable from *Morstein,* because *Morstein* involved claims against a non-ERISA entity.

7. Furthermore, the plaintiff's claims relate to an ERISA plan because the court will have to evaluate the terms of the policy to ascertain whether the policy allows the defendant to offset disability insurance benefits payments by Social Security disability benefits.

> Because the terms of [the] ERISA-governed policy are critical to the resolution of [the plaintiff's] ... claims, [his] cause of action is sufficiently related to an employee benefits plan to fall within ERISA's preemptive scope.

*Hall v. Blue Cross/Blue Shield of Alabama,* 134 F.3d 1063, 1065 (11th Cir.1998).

## B. Bad Faith Claims

■ The plaintiff next argues that even if his breach of contract claim is preempted by ERISA, his bad-faith failure to pay benefits is not preempted because the "bad faith tort is reserved exclusively for regulation of insurance contracts" and is "saved" from preemption by ERISA's saving clause. (Pl's Res., p. 6.) He relies on *UNUM Life Ins. Co. of Am. v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), to support his position. That reliance is misplaced. First, in *Ward,* the Court did not address directly the issue of preemption of bad faith claims, but rather addressed California's notice-prejudice rule.[8] Second, and perhaps more importantly, prior and subsequent Supreme Court precedent belies plaintiff's position. In *Pilot Life,* the Supreme Court concluded that Mississippi's bad faith law was not one that "regulated insurance" and thus, was not "saved" by the saving clause. 481 U.S. at 50, 107 S.Ct. 1549.

> Even though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law. Any breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages under Mississippi law. Neither do the McCarran–Ferguson Act factors support the assertion that the Mississippi law of bad faith "regulates insurance."

*Id.* The Supreme Court relied on *Pilot Life* in deciding *Ward* and, although it had the opportunity, chose not overrule or alter it's holding in *Pilot Life. See Ward,* 526 U.S. at 367–68, 119 S.Ct. 1380.[9]

In addition, the law in this circuit is well established that Alabama's bad faith tort does not regulate insurance and is not saved from preemption. "Alabama's tort of bad faith refusal to pay is not saved from preemption by ERISA's saving clause.... We have held on more than one occasion, in precedent binding on this Circuit that the saving clause does not apply to this tort." *Gilbert v. Alta Health & Life Ins. Co.,* 276 F.3d 1292, 1299 (11th Cir. 2001). *See also, Walker v. S. Co. Servs. Inc.,* 279 F.3d 1289, 1294 (11th Cir.2002); *Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1215 (11th Cir.1999); *Amos v. Blue Cross–Blue Shield of Ala.,* 868 F.2d 430 (11th Cir.1989); *Belasco v. W.K.P. Wilson & Sons, Inc.,* 833 F.2d 277, 281 (11th Cir.1987). Consequently, bad faith tort claims are also preempted by ERISA. "We conclude that *Ward* did not change ERISA's preemptive effect on the Alabama law of bad faith." *Walker,* 279 F.3d at 1290. The court concludes, therefore, that the plaintiff's bad faith claim is not saved from ERISA preemption.

## C. Reimbursement of Benefits Under the Plan

■ Finally, the plaintiff argues that, even if his claims are preempted by ERISA, his claims are still viable because the set-off provision in the Plan "is neither legal nor enforceable pursuant to 42 U.S.C. § 407(a)." (Pl's Res., p. 2). He relies on *Provident Life & Casualty Co.,*

---

8. California's notice-prejudice rule requires an insurer to demonstrate prejudice by untimely notice of a claim prior to denying a claim. *UNUM Life Ins. Co. of Am. v. Ward,* 526 U.S. 358, 364, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999)

9. *See also, generally, Kentucky Assoc. of Health Plans, Inc. v. Miller,* —— U.S. ——,

—, 123 S.Ct. 1471, 1475, 155 L.Ed.2d 468 (2003) ("It is well established in our case law that a state law must be "specifically directed toward" the insurance industry in order to fall under ERISA's saving clause; laws of general application that have some bearing on insurers do not qualify.")

*Inc. v. Crean,* 804 So.2d 236 (Ala.Civ.App. 2001),[10] to support this position. Again, his reliance is misplaced. Federal, not state, law controls in this case. "While ERISA ... preempt[s] state law, Congress has authorized federal courts to create federal common law to implement these statutory schemes." *Branch v. G. Bernd Co.,* 955 F.2d 1574, 1580 (11th Cir. 1992).

More importantly, federal law does not support Revells' interpretation of section 407(a). 42 U.S.C. § 407(a) provides as follows.

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

In *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler,* 537 U.S. 371, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003), the Supreme Court analyzed the terms contained within section 407(a). "These legal terms of art [execution, levy, attachment or garnishment] refer to formal procedures by which one person gains a degree of control over property otherwise subject to the control of another, and generally involve some form of judicial authorization." 537 U.S. at ——, 123 S.Ct. at 1024. The Court then held that in order to come within the protection of section 407(a), there must be "some judicial or quasi-judicial mechanism ... by which control of property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability." *Id.* at 1025. In this case, it is undisputed that MetLife did not utilize or otherwise involve any form of legal process expressly forbidden by section 407(a). Revells' benefits are not being levied, attached or garnished. Thus, § 407(a) is not applicable and offers Revells no protection. Furthermore, the law is clearly established that set-off provisions in disability or pension plans are permissible. "[P]ension funds are ... integrated with the funds from other income maintenance programs, such as Social Security." *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 514, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). "The contractual agreement that the contractual disability benefits are to be reduced by payments for disability statutorily due to the employee independent of the employer's contractual obligation is not unconscionable or prohibited by law." *Glover v. S. Cent. Bell Tel. Co.,* 644 F.2d 1155, 1159–60 (5th Cir. Unit A 1981).[11] Courts have uniformly held that disability benefit plans may offset benefit payments by Social Security disability payments. *See Hurd v. Ill. Bell Tel. Co.,* 234 F.2d 942, 947 (7th Cir.1956) ("[T]he Bell Plan authorized the deduction of Social Security benefits in the manner followed and that no rule of law, including the Social Security Act, makes unlawful a pension system which takes advantage of governmental benefits to which

---

**10.** In *Crean,* Provident Life and Casualty Insurance Company brought suit against Paula Crean seeking repayment of disability insurance benefits. Provident relied on an agreement with Crean to reimburse Provident disability benefits if Crean received Social Security disability benefits. The Alabama Court of Civil Appeals held that the plaintiff's claims were not preempted by ERISA because Crean was not an ERISA entity and 42 U.S.C. § 407 prohibited Provident from collecting a monetary judgment from Crean's retroactive Social Security award.

**11.** *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.)

employees subsequently become entitled."); *Godwin v. Sun Life Assur. Co. of Can.*, 980 F.2d 323, 327 (5th Cir.1992) (collecting cases); *Lopez v. Commonwealth Oil Ref. Co., Inc.*, 833 F.Supp. 86, 89 (D.Puerto Rico, 1993) ("ERISA does not prohibit offsetting other income received as social security benefits against long term disability benefits."); *Poisson v. Allstate Life Ins. Co.*, 640 F.Supp. 147, 149 (D.Me.1986) ("[I]ts contractual obligation to the Plaintiff is payment of a dollar amount which maintains [his] income at a contractually agreed upon level, depending on other benefits [ ]he receives.")

Because the court concludes that the offset provision is not barred by Section 407(a), the court must now determine whether there remains in this case a genuine issue of material fact in dispute sufficient to preclude summary judgment. Revells alleges that MetLife improperly reduced his disability benefits payments and improperly denied him benefits for a period of time under the guise of recouping an overpayment. MetLife defends the reduction and denial of benefits as being in accordance with the terms of the Plan.

The plain language of the Plan quite clearly allows for a reduction of benefits as an offset for the receipt of Social Security benefits.

### Reduction in Benefits

In some cases, your benefits under the Long–Term Disability Plan may be reduced. If your disability occurred on or after January 1, 1985, your monthly benefit is your basic monthly benefit reduced by: ... any income you are entitled to receive from Social Security, ...

(Def. MetLife Ex. A; Pl's Ex. A)

Under the terms of the Plan, Revells' benefits would be paid by calculating a percentage of his gross monthly salary reduced by any other income he received from Social Security. It is undisputed that Revells is receiving the amount of benefits for which he contracted under the terms of the Plan, less the amount of his Social Security benefits in accordance with the terms of the Plan. The plaintiff has presented no facts that would demonstrate that there exists a genuine issue of material fact about any issue in this case and thus, the court concludes that the defendant is entitled to judgment as a matter of law.

## V. CONCLUSION

For the reasons as stated, it is

ORDERED and ADJUDGED that the defendant's motion for summary judgment be GRANTED and this case be DISMISSED with prejudice. It is further

ORDERED and ADJUDGED that costs be TAXED against the plaintiff for which execution may issue.