[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 30, 2007
THOMAS K. KAHN
CLERK

No. 06-12071
Non-Argument Calendar

_____

D. C. Docket No. 05-00001-CR-1-SPM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDGAR JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(January 30, 2007)**

Before ANDERSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Edgar Johnson appeals his conviction for conspiracy to distribute and to

possess with the intent to distribute less than 500 grams of a mixture or substance containing cocaine. After review, we affirm.

## I.    Background

Count One of the superseding indictment charged that between November 1, 2004 and December 7, 2004, Johnson conspired with others to distribute and to possess with the intent to distribute 500 grams or more of a mixture or substance containing cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B)(ii) and 846.[1] Johnson pled not guilty and proceeded to trial. The jury convicted Johnson. To evaluate Johnson's claimed errors, we must first recount the trial evidence.

### A.  Offense conduct

The case against defendant Johnson arose out of his selling cocaine to his co-conspirator, Major Parker, who in turn sold the cocaine to co-conspirator Farrah Stephanie Moise. Parker, who played basketball at and graduated from the University of Florida, testified for the government at trial. Parker outlined in detail how defendant Johnson supplied Parker with the cocaine Parker sold to Moise.

More specifically, Moise and Parker were acquaintances. Around November 2004, Moise asked Parker if he could supply her with cocaine. Parker contacted his cousin, Josh Thomas, and Thomas advised Parker that defendant

---

[1]The remaining counts of the superseding indictment were dismissed on the government's motion.

Johnson could supply Parker with cocaine. Parker testified that he knew defendant Johnson as "Bede." According to Parker, he met with defendant Johnson in November 2004 and asked Johnson to "front" him two ounces of cocaine, which Johnson did. Parker testified that this transaction took place at a convenience store in Ocala, Florida known as the "Big Apple." Parker then supplied that cocaine to Moise, who in turn sold the cocaine to an undercover police officer. Parker testified that defendant Johnson supplied him with cocaine on at least two occasions in November 2004.

In late November-early December 2004, Moise asked Parker if he could get her a half kilogram (500 grams) of cocaine, and Parker contacted defendant Johnson and Thomas. According to Parker, defendant Johnson told him that Johnson would leave the cocaine at Thomas's house. Parker and Johnson agreed on a price of $11,500 for the half kilogram of cocaine. On December 7, 2004, Parker picked up 493.8 grams of Johnson's cocaine from Thomas's house, and he delivered the cocaine to Moise later that day. Moise then sold the cocaine to the same undercover police officer for $12,800. When the undercover officer complained to Moise that the delivery was short by approximately eight to ten grams, Moise contacted Parker about the discrepancy, and Parker retrieved an additional 9.8 grams of cocaine, which he had at his house. Parker and Moise were

3

then arrested.

Parker subsequently agreed to cooperate with the police. During a police interview with DEA Agent Timothy Durst, Parker used his cell phone to call defendant Johnson so that the police could get information about Johnson, Parker's supplier. A tape recording of that conversation was played for the jury. During the conversation, Parker asked Johnson when he wanted the "11-5" for the "half." Parker testified about the content of the recorded conversation and explained that he was asking Johnson about the $11,500 (the "11-5") that he owed Johnson for Johnson's half kilogram of cocaine (the "half").

Agent Durst also testified for the government. Agent Durst was present at the arrests of Parker and Moise, and he discovered telephone numbers for "Bede" (defendant Johnson), Thomas, and Moise stored in Parker's cell phone. Durst had Parker call Johnson in order to confirm "Bede's" identity as Johnson and to corroborate Parker's statement that "Bede" was his supplier of cocaine.

Over defendant Johnson's objection, Agent Durst also testified regarding the content of the recorded cell phone conversation between Parker and "Bede"/Johnson. Durst first explained that he was experienced in narcotics investigations and that as a result of his experience, he had knowledge of the terms and phrases commonly used in the drug trade. Durst then explained that a half

4

kilogram of drugs was commonly referred to as a "half" and that $11,500 was often shortened to "11-5." Durst further testified that he was present during Parker's cell phone call to defendant Johnson, and that based on his understanding of their conversation, Parker and Johnson were discussing the half kilogram of cocaine that Johnson gave to Parker and the $11,500 that Parker owed Johnson for the cocaine.

Agent Durst also testified that cell phone records established a multitude of calls between Parker and defendant Johnson, Parker and Thomas, and Parker and Moise. Durst explained that there was a series of calls between Parker and defendant Johnson around the dates of the drug transactions, and that on the date of the final drug transaction, December 7, 2004, Parker called Johnson several times around 1:00 p.m. Parker was ultimately arrested around 2:00 p.m. Finally, Durst testified that drug dealers often took steps to hide their identities, and noted that it was difficult to track down defendant Johnson because, among other things, he was using a cell phone that was not in his name. Johnson's ex-girlfriend, Catherine Stoner, testified that she acquired the cell phone in issue for Johnson while they were dating, and at Johnson's request, she established the phone in her name.

**B.    Johnson's prior drug activity**

Two other individuals testified about defendant Johnson's drug activity prior

to the charged cocaine conspiracy. Alfred Wheeler testified that he had twice purchased marijuana from defendant Johnson; that Johnson had offered to sell him cocaine; and that he had often seen Johnson in Ocala in the company of Thomas, a known drug dealer.

Likewise, Navarus Bryant, an Ocala drug dealer, testified that he knew defendant Johnson by the name "Bede"; that he once saw Johnson sell nine ounces of cocaine to an individual at a gym in Ocala; and that he once observed a mutual friend named Scooter sell Johnson nine ounces of cocaine at the Big Apple. According to Bryant, when Scooter sold defendant Johnson cocaine, Johnson stated that he could also obtain cocaine from Thomas, even though Thomas did not have any to sell to Johnson at that moment.

### C. Sentencing

The presentence investigation report ("PSI") assigned defendant Johnson an offense level of 34 based on his status as a career offender. See U.S.S.G. § 4B1.1. Johnson had two prior felony drug convictions. The PSI recommended no enhancements or reductions. Neither the government nor defendant Johnson filed objections to the PSI. With an offense level of 34 and a criminal history category of VI, Johnson's advisory guidelines range was 262 to 327 months' imprisonment. The district court sentenced Johnson to 294 months' imprisonment. Johnson does

not challenge his sentence on appeal or his status as a career offender.[2]

## II.    Discussion

### A.    Agent Durst's testimony

Defendant Johnson contends that the district court erred in permitting Agent Durst to testify that it is common for drug dealers to hide their identities by using cell phones in other persons' names, and to explain the meaning of the recorded conversation between Johnson and Parker that was played for the jury.[3]

We need not determine whether the district court erred in allowing Agent Durst's testimony, because any error was harmless. See United States v. Hornaday, 392 F.3d 1306, 1315 (11th Cir. 2004). First, Parker himself testified that the term "11-5" referred to "the money that [Parker] needed to bring back" to Johnson, and that the term "half" referred to "the half kilogram" of cocaine for which the money was owed. Thus, Agent Durst's testimony was duplicative of Parker's as to the meaning of the recorded conversation between Parker and Johnson.

Moreover, as to the cell phone, Johnson's ex-girlfriend herself testified that

---

[2]Johnson does not challenge his sentence based on drug quantity because, as he acknowledges, "the district court's drug quantity determination [of between 400 and 500 grams of cocaine] ultimately had no affect [sic] on the sentence imposed" due to the district court's determination that Johnson qualified as a career offender.

[3]We review a district court's evidentiary rulings for abuse of discretion. United States v. Pendas-Martinez, 845 F.2d 938, 941 (11th Cir. 1988).

she had obtained the cell phone for Johnson in her name. Additionally, Parker testified that he and Johnson arranged multiple cocaine transactions, including the approximately half-kilogram transaction that led to Parker's and Johnson's arrests. Cell phone records then corroborated Parker's testimony by establishing a pattern of telephone calls between Parker and Johnson that was consistent with the drug delivery dates.

Accordingly, even absent Agent Durst's challenged testimony, there was sufficient evidence to support Johnson's conviction, and any error in admitting Durst's challenged testimony was did not affect the verdict and was thus harmless. Hornaday, 392 F.3d at 1316-17.

## B. Prior acts evidence

Defendant Johnson also challenges the district court's decision to allow Wheeler and Bryant to testify about other instances in which Johnson dealt drugs.[4] Johnson contends that this evidence of his prior bad acts should have been inadmissible pursuant to Federal Rule of Evidence 404(b); however, Johnson concedes that his argument is foreclosed by this Court's decision in United States v. Matthews, 431 F.3d 1296 (11th Cir. 2005), cert. denied, __ U.S. __, 127 S. Ct.

---

[4]"The district court's decision to admit or exclude such evidence is reviewed for abuse of discretion." United States v. Matthews, 431 F.3d 1296, 1311 (11th Cir. 2005), cert. denied, __ U.S. __, 127 S. Ct. 46 (2006).

46 (2006). In <u>Matthews</u>, we observed that our "precedent regards virtually any prior drug offense as probative of the intent to engage in a drug conspiracy." 431 F.3d at 1311. Johnson "acknowledges that <u>Matthews</u> controls, but maintains that <u>Matthews</u> was wrongly decided."

Only the Supreme Court or this Court sitting <u>en banc</u> can overrule a prior panel decision. <u>See</u> <u>Walker v. S. Co. Servs.</u>, 279 F.3d 1289, 1293-94 (11th Cir. 2002). Because Johnson concedes that <u>Matthews</u> governs, and because this panel cannot overrule <u>Matthews</u>, we reject Johnson's argument.

## III. Conclusion

For the foregoing reasons, we affirm Johnson's conviction.

**AFFIRMED.**