SHAW, Justice.
The United States District Court for the Northern District of Alabama, Southern Division (“the district court”), has certified to this Court a question pursuant to Rule 18, Ala. R.App. P. We initially accepted the certified question; however, for the reasons discussed below, we now decline to answer it.

Facts and Procedural History

In its certification to this Court, the district court provided the following background information:
“On May 29, 2003, Shelby Realty [Holdings, LLC (‘Shelby Realty1),] purchased a mortgage on certain Property and foreclosed on the Property the same day. On June 10, 2003, Shelby Realty recorded the foreclosure deed in the records of the Probate Court of Jefferson County, Alabama. In its capacity as an agent for Stewart Title [Guaranty Company (‘Stewart Title’) ], Birmingham Title Services Corporation issued a [title insurance [1]] policy in favor of Defendant *470 Shelby Realty insuring fee simple title to the Property in Shelby Realty.
“On April 20, 2004, Birmingham-Southern College filed suit against Shelby Realty, alleging that the College had fee simple title to the Property, and that Shelby Realty only possessed a leasehold interest in the Property. On April 22, 2005, Judge Smallwood held that the College retained its fee simple interest in the Property, and that Shelby Realty had only a leasehold interest.
“On December 28, 2006, Shelby Realty and the College entered into a Purchase and Sale Agreement whereby Shelby Realty sold to a subsidiary of the College Shelby Realty’s interest in the Property. Stewart Title then sent a check to Shelby Realty in the amount of $264,000.00, which Stewart Title claims represents the difference in the value of the fee interest in the Property subject to the College’s ownership of the fee interest, assuming that the Property was used as apartments. On January 8, 2008, counsel for Shelby Realty sent a letter to Stewart Title enclosing a Proof of Loss on behalf of Shelby Realty, and asserting that Shelby Realty was entitled to additional amounts under the terms of the Policy predicated upon Shelby Realty’s future intended use of the Property as condominiums.
“The parties dispute how liability should be determined under the policy, whether Shelby Realty is entitled to damages related to its intended use of the Property or only for the way the Property was actually used at the time of the loss.”
To aid the district court in determining this issue, it certified the following question to this Court:
“Under a title insurance policy, is the insured’s valuation evidence limited to the use to which the property is being devoted as of the date of the discovery of the defect in title, or is an insured allowed to recover damages for the highest intended and best use of the property, even if the property was not being used in that manner at the time of the loss?”

Discussion

The title-insurance policy at issue in this case appears to be American Land Title Association’s standard “Owner’s Policy,” as revised in 1992. The pertinent portion of the policy states:
“This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.
“(a) The liability of the Company under this policy shall not exceed the least of:
“(i) the Amount of Insurance stated in Schedule A; or,
“(ii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.”
(Emphasis added.)
We note, initially, that the certified question is framed in the abstract, with no reference to any specific language in the policy, i.e., as an evidentiary issue with broad application. However, the dispute in this case, as demonstrated by the arguments of the parties, appears to involve the determination of the date that should be used to ascertain the value of the certain property foreclosed on by Shelby Realty and as to which Birmingham Southern *471 College held fee-simple title.[2] This Court has not had an occasion to discuss the valuation method prescribed by the type of title-insurance policy at issue here. Various authorities note that courts, in construing similar policies, have selected differing dates for setting the value of the subject property, including the value of the property on the date the insured purchased the property or, as Stewart Title suggests, the date the defect in the title is discovered. See, e.g., Barlow Burke, Law of Title Insurance § 7.04 (Aspen Publishers, Inc. 2010); James L. Gosdin, Title Insurance: A Comprehensive Overview, p. 186 (2d ed.2000); and Swanson v. Safeco Title Ins. Co., 186 Ariz. 637, 641, 925 P.2d 1354, 1358 (Ariz.Ct.App.1995) (“ ‘It seems quite apparent to us that liability should be measured by diminution in the value of the property caused by the defect in the title as of the date of the discovery of the defect, measured by the use to which the property is then devoted.’ ” (quoting Overholtzer v. Northern Counties Title Ins. Co., 116 Cal.App.2d 113, 130, 253 P.2d 116, 125 (1953))). The valuation method proposed by Shelby Realty is based in part on methods used to value property in eminent-domain situations, where a condemnee is often entitled to present evidence of the highest and best use of the condemned tract. See, e.g., Historic Blakely Auth. v. Williams, 675 So.2d 350, 352 (Ala.1995), and Fohn v. Title Ins. Corp. of St. Louis, 529 S.W.2d 1, 4 (Mo.1975).[3]
Although the district court asks us to choose between two valuation methods proposed by other decisions, after further review of the arguments presented by the parties and of the text of the title-insurance policy, it appears that the question cannot be answered without resorting to the specific language of the policy. See Southern Title Guar. Co. v. Prendergast, 478 S.W.2d 806 (Tex.Civ.App.1972) (noting that a title-insurance policy may establish a formula for computing property valuation). Specifically, we note that there is language in the policy here that appears to address the appropriate valuation method. For example, the policy appears to limit Stewart Title’s liability to pay, upon demonstration of “actual monetary loss,” to the lesser of “the [ajmount of [ijnsurance stated in Schedule A,” i.e., the policy limits of coverage, or “the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by [the] policy.” (Emphasis added.) No definitions of the terms “actual monetary loss” or “as insured” are provided in the policy; however, the term “actual monetary loss” could be deemed to restrict damages to those based on the real, current status of the property as it was being used at the time the defect in title was discovered. *472 See Chicago Title Ins. Co. v. Huntington Nat’l Bank, 87 Ohio St.3d 270, 274, 719 N.E.2d 955, 960 (1999) (discussing the use in a title policy of the phrase “actual loss,” noting that “[t]he word ‘actual’ means something that exists in fact or reality,” and concluding that “the parties intended for an insured’s loss ... to be a real loss, one based on fact, not speculation or possibility”). Further, the reference to the “value” of the property “as insured” could be construed as limiting the consideration of the use of the property to the use either when the policy was purchased or when the defect in title was discovered. See Bender v. Kansas Secured Title & Abstract Co., 34 Kan.App.2d 399, 407-08, 119 P.3d 670, 676-77 (2005) (noting a distinction between “estate or interest as insured,” language identical to the language here and quoted above, and improvement of the property “to the best available alternative”). Thus, the title-insurance policy itself would appear to control the proper valuation in this case.[4]
The parties, in their briefs to this Court, do not address the construction of the policy at issue and instead refer this Court to various authorities discussing how valuation may be determined in various title-insurance contexts. Additionally, it is not apparent from the materials before us that the district court has had the opportunity to address whether the specific language of the policy would control the determination of the value of the property.
Rule 18, Ala. R.App. P., provides that this Court may answer questions from federal courts only where “there are no clear controlling precedents” and the answer to the question is “determinative of said cause.” Construing an insurance policy treads no new ground under Alabama law, and precedent determinative of such an analysis is well settled. Public Bldg. Auth. of Huntsville v. St. Paul Fire & Marine Ins. Co., 80 So.3d 171, 180 (Ala.2010) (“[T]he interpretation of a contract does not present a novel legal issue. Rather, the rules of contract construction and interpretation are well established in Alabama....”). Furthermore, and perhaps more importantly, because the district court might determine that the valuation issue can be properly and fairly resolved by looking to the specific language of the policy, answering the certified question would necessitate our fashioning a broad rule with the possibility that it would have no application to the particular facts presented. That possibility also renders us unable to answer the question. See Palmore v. First Unum, 841 So.2d 233, 235 (Ala.2002) (“In order for this Court to consider a certified question from a federal court, the question must be, among other things, ‘determinative of [the underlying] cause.’” (quoting Rule 18(a), Ala. R.App. P.)). Therefore, we see no grounds under Rule 18 that will allow this Court to answer the question. Heatherwood Holdings, LLC v. First Commercial Bank, 61 So.3d 1012, 1026 (Ala.2010) (declining to answer a certified question where “existing Alabama law is sufficient to guide the [certifying court]”).

Conclusion

We respectfully decline to answer the question certified by the district court.
QUESTION DECLINED.
MALONE, C.J., and WOODALL, STUART, BOLIN, PARKER, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs in the result.

. In its brief to this Court, Shelby Realty points out that the factual statement included with the district court’s certification erroneously referred to the subject insurance coverage as a "homeowner’s” policy. (Shelby Realty’s brief, at p. 4 n. 2.) See Metmor Fin., Inc. v. Commonwealth Land Title Ins. Co., 645 So.2d 295, 297 (Ala.1993) (" ‘Title insurance’ is defined as ‘insurance of owners of property, or others having an interest therein or liens or encumbrances thereon against loss by encumbrance, or defective titles, or invalidity or adverse claim to title.’ § 27-5-10, Ala.Code 1975.”).

. "[T]his Court will rephrase a question certified to it in order to address the ‘basic issue implicated by th[e] question' and 'contemplated by the [court] in its certification.'" Holcim (US), Inc. v. Ohio Cas. Ins. Co., 38 So.3d 722, 726-27 (Ala.2009) (quoting John Deere Co. v. Gamble, 523 So.2d 95, 99 (Ala.1988)).

. We note, as reflected in the facts supplied by the district court, that the executed proof of loss submitted by Shelby Realty indicated both that Shelby Realty "intended to refurbish and renovate the existing structures on the Property, and ultimately sell the individual, formerly apartment, units as condominiums” and that, "as a result of the judicial determination that Shelby was not vested with fee simple title, Shelby was unable to carry out its planned renovation and sale of the Property.... ” Stewart Title argues that all evidence presented in the district court supports Stewart Title's position that it was unaware that the property was purchased for development and, more specifically, that "[it] had no knowledge of Shelby Realty’s ‘intention’ to develop the Property into condominiums.” Reply brief, at p. 18 n. 7.

. We do not decide the proper reading of the policy, because that issue is not before us.