**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 3, 2024

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 3, 2024

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT IN<br><br>JACK POTTER,<br>　　　　　Plaintiff,<br>　　　v.<br>CITY OF LACEY,<br>　　　　　Defendant,<br>　　　　　　　　and<br>KEN SEMKO,<br>　　　　　Defendant. | No. 101188-1<br>(certified No. 21-35259)<br><br>EN BANC<br><br>Filed: <u>July 3, 2024</u> |

GORDON McCLOUD, J.—Jack Potter lived in a 23-foot travel trailer hitched to his truck. He parked his truck and attached trailer on public lots and streets in the city of Lacey, Washington.

In 2019, Lacey (or the City) passed an ordinance barring people from parking such large vehicles and trailers on public lots and streets for more than four hours per day. The City then ordered Potter to move his trailer and truck off the city hall parking lot and off Lacey streets.

Potter sued the City and claimed—in part—that its new ordinance violated his state constitutional "right to reside," which he argued inhered in the state constitutional right to intrastate travel. The Ninth Circuit Court of Appeals has certified questions of state law to this court concerning this right-to-travel—or, as Potter calls it, this right-to-reside—claim:

> Is the right to intrastate travel in Washington protected under the Washington State Constitution, or other Washington law? If Washington state law protects the right to intrastate travel, does the RV [(recreational vehicle)] Parking Ordinance codified in LMC [(Lacey Municipal Code)] §§ 10.14.020-[.]045 violate Jack Potter's intrastate travel rights?

Ord. Certifying Question to Wash. State Sup. Ct. at 2 (Aug. 18, 2022) (Ninth Cir. Ord.).

We treat this two-part inquiry as a single question that asks, "Does the RV Parking Ordinance codified in LMC §§ 10.14.020-.045 violate Jack Potter's claimed Washington State constitutional right to intrastate travel?" The answer to that question is no. Potter has not established that his claimed right to reside inheres in a Washington state constitutional right to intrastate travel or that it protects his preferred method of residing in Lacey:  by siting his 23-foot trailer on a public street in violation of generally applicable parking ordinances.[1]

---

[1] Potter asks us to reformulate the questions presented to add whether Lacey's parking ordinance violates article I, section 14 of the Washington Constitution—our state constitutional bar against cruel punishments. Br. of Pl. at 4, 46-50. The American Civil

FACTUAL BACKGROUND

The City enacted certain antiparking and related anticamping ordinances in 2019. At that time, Potter was a 62-year-old veteran who had lived in Lacey for most of the past 20 years. Excerpts of R. (ER) at 49-50 (Potter decl.). He had lived intermittently at a friend's house, in a car, and for a time at a veterans' outreach program that he ran. *Id.* at 52-53.

But Potter's veterans' program closed and Potter suffered a brief hospitalization. He then bought a 23-foot travel trailer, hitched it to his truck, and began living in it full time. *Id.* at 53. Sometimes he parked the travel trailer in private lots and other times he parked it on the Lacey streets. *Id.* In May 2019, Potter moved his trailer to the Lacey City Hall parking lot and began living there full-time, along with a group of other vehicle-sheltered individuals. *Id.* at 54-55.

---

Liberties Union of Washington (ACLU) amicus brief asks us to also address whether Lacey's parking ordinance violates Washington Constitution article I, section 5—the state constitutional guaranty of freedom of association. Br. of Amicus Curiae ACLU at 3-5. To be sure, "[w]e have the authority to reformulate certified questions." *Dearinger v. Eli Lilly & Co.*, 199 Wn.2d 569, 573 n.2, 510 P.3d 326 (2022) (citing *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 205, 193 P.3d 128 (2008) (plurality opinion)). But we generally decline to answer a question that is completely different from the one posed by the federal court. *Id.* The article I, section 14 and article I, section 5 questions presented by these amici are completely different from the right-to-reside or right-to-intrastate-travel questions posed by the federal court. We therefore decline to address them.

3

But in the fall of 2019—seemingly in response to a regional rise in the number of people living or camping on public property—the City enacted an anticamping ordinance and an affordable housing strategy. *Id.* at 33-34 (Gundel decl.), 103 (Ordinance 1549 (anticamping)), 109 (Ordinance 1550 (affordable housing strategy)).

One of those ordinances, Ordinance 1551, barred a person from parking a "recreational vehicle, motor home, mobile home, trailer, camper, vessel or boat upon the improved or unimproved portion of any street, alley, public right-of-way, or publicly owned parking lot for more than four hours . . . ." LMC 10.14.020(B); ER at 218-21 (Ordinance 1551 (parking)).

Ordinance 1551 contains two exceptions, but neither applied to Potter. The first exception allows a trailer owner to park temporarily for the purposes of loading or unloading. LMC 10.14.020(B)(l). The second exception allows a trailer owner to obtain a permit through a process controlled by Lacey's city manager. LMC 10.14.020(B)(2), .045.

If neither exception applies and the trailer owner parks for more than four hours on Lacey public land, the ordinance bars the owner from parking the rig on any Lacey "street, alley, public right-of-way or publicly owned parking lot" for the following 24 hours. LMC 10.14.020(C). Lacey punishes violations of these

4

parking provisions with a $35 fine and immediate impoundment of the trailer. LMC 10.14.040.

To implement Ordinance 1551, the city manager adopted a two-tiered permitting system for trailers and other large residential vehicles covered by the ordinance. LMC 10.14.020(B)(2), .045; ER at 220-21 (relevant portion of Ordinance 1551), 222-27 ("Temporary Parking Permit Policies and Procedures" manual). One permitting process applies to "residents," defined as a "Lacey homeowner or renter"; the other permitting process applies to "nonresidents," defined as an "[i]ndividual without a permanent address." ER at 223. The residents' permitting process allows homeowners or renters to request up to four temporary permits each year for visitors. *Id.* Those permits allow visitors to park their trailer or vehicle for up to 48 hours within 150 feet of the requesting resident's home. *Id.* To obtain these permits, the resident must provide proof of residency, the license plate numbers for the permitted vehicle, and the requester's address. *Id.* at 223-24.

The nonresidents' permitting process allows someone without a permanent address—like Potter—to "receive a temporary parking permit in a designated permitted parking area," if the requester is "actively engaged with social services." *Id.* at 224. To obtain a permit, the nonresident must provide government-issued identification, proof of insurance and registration, and disclose all other occupants of

the trailer or vehicle. *Id.* The Lacey Police Department must then conduct a background check on all of the vehicle's occupants and may deny a permit if any of them have an outstanding warrant or are registered as a sex offender.[2] *Id.* at 224. Nonresident permits are valid only within designated areas of the City, only for the period indicated on the permit, and only for 12 (or fewer) hours per day. *Id.*[3]

In other words, as the Ninth Circuit summarized, these provisions effectively make it "impossible for vehicle-sheltered individuals to live in an RV on Lacey's public land." Ninth Cir. Ord. at 5. As a result, shortly after Lacey enacted this ordinance, Potter and the other vehicle-sheltered individuals in the Lacey City Hall lot were ordered to leave or risk citations and impoundment. ER at 56. Potter complied and has since moved his trailer to Olympia, Washington. *Id.* at 59.

---

[2] Potter did not raise a challenge to these exceptions. ER at 258-60.

[3] Lacey officials have technically designated a "safe lot" in which nonresident permit holders can park their trailer or vehicle, but it is not in operation. ER at 15 (Fed. Dist. Ct. Ord.). As the federal district court stated, a "safe lot does not appear to have come to fruition." *Id.* Lacey contests the Ninth Circuit's and the district court's assertions that Lacey has failed to provide the promised safe lot. Def.'s Br. at 7 n.3. But Lacey provides no proof that the lot is operating. *Id.* (citing ER at 311). And at oral argument before the Ninth Circuit Court of Appeals, Lacey's counsel confirmed that Lacey had not opened a safe lot. Ninth Cir. oral arg., *Potter v. City of Lacey,* No. 21-35259 (May 17, 2022), at 26 min., 20 sec., *video recording by* United States Courts for the Ninth Circuit, https://www.ca9.uscourts.gov/media/video/?20220517/21-35259/.

PROCEDURAL HISTORY

But Potter also sued. He filed his lawsuit against the City in August 2020 in Thurston County Superior Court. He alleged that Ordinance 1551 violated several provisions of the state and federal constitutions as applied to him and other "homeless people who live in their vehicles." *Id.* at 248 (complaint). But he later clarified, in both the trial court and in this court, that he raised his claims only for himself as an individual and challenged Ordinance 1551 only as applied to him, not on its face.[4]

> Potter's right to intrastate travel claim states in full:
>
> By adopting and enforcing laws, policies and customs that make it unlawful for the homeless people living in their vehicles to live in the City of Lacey, the Defendants have deprived the Plaintiff of his right to freedom of travel guaranteed by the Washington Constitution. Defendants have denied Plaintiff his state constitutional right *not* to travel to another city within Washington State and not to live elsewhere in Washington State.

*Id.* at 258 (complaint). As this quote shows, Potter frames his claim as a "right *not* to travel." His briefing calls it a "right to reside." Br. of Pl. at 35.

---

[4] Appellant's [Pl.'s] Answer to Amicus Curiae Br. of Wash. Ass'n of Mun. Att'ys et al. at 21 ("The only question in this case is whether Lacey's four- hour parking law is unconstitutional as applied to Jack Potter on the facts in the record of this case." (emphasis omitted)); Def.'s Br. at 10 ("On cross-motions for summary judgment in the district court, Potter further clarified that he was making an 'as applied' challenge to the City's parking ordinance. Dkt. 16, p. 2.").

Lacey removed the case to the federal district court for the Western District of Washington. The parties filed cross motions for summary judgment. ER at 286-87 (Lacey's notice of removal), 12 (fed. dist. ct. ord.).

The district court granted summary judgment to Lacey on nearly all of its claims, including Potter's state right to intrastate travel claim. *Id.* at 4-7, 25. The district court explained that Ordinance 1551

> does not fundamentally impede the right to exist or reside in a given area. It is a parking ordinance that is applicable to all people in Lacey, resident or not, and only by extension does it restrict the *manner* in which a person can live in Lacey. The right to travel does not, however, include a right to live in a certain manner. It is, therefore, inapplicable.

*Id.* at 23 (fed. dist. ct. ord.).

Potter appealed to the Ninth Circuit Court of Appeals. *Id.* at 312. Following oral argument, that court certified the questions quoted above to this court. Ninth Cir. Ord. at 2-3.

ANALYSIS

The Ninth Circuit has asked us whether the RV parking ordinance codified in LMC 10.14.020-.045 violates Potter's Washington state constitutional intrastate travel rights. *Id.* at 2.

We must analyze that claim based on the certified record of Potter's case. That record shows that Potter challenges Ordinance 1551 only as applied to his

8

own circumstances. *See supra* at 7 & n.4; Appellant's [Pl.'s] Reply Br. at 28-32.

An as applied challenge "'is characterized by a party's allegation that application

of the statute in the *specific context* of the party's actions or intended actions is

unconstitutional.'" *Fields v. Dep't of Early Learning*, 193 Wn.2d 36, 46, 434 P.3d

999 (2019) (plurality opinion) (quoting *City of Redmond v. Moore*, 151 Wn.2d

664, 669, 91 P.3d 875 (2004)); *see Broadrick v. Oklahoma*, 413 U.S. 601, 610-11,

93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). In other words, the record shows that

Potter asserts only a very limited and specific right: the right to reside in a 23-foot

travel trailer hitched to his truck on public streets and lots for an indefinite period

of time. Br. of Pl. at 23, 35, 37 n.21.

But Potter has presented us with no authority, binding or nonbinding, to

support a constitutional right to reside in this manner. The nonbinding authority

based on facts most similar to the facts of Potter's case has actually come to the

opposite conclusion: those cases hold that there is no (federal) constitutional right

to intrastate travel that protects the right to remain in a particular place, in a

particular manner, in a vehicle. *E.g.*, *State v. Pelletier*,  2015 ME 129, ¶ 7 & n.5,

125 A.3d 354 (assuming right to intrastate travel exists, upholds State's right to

require driver's licenses and establish rules of the road: "the State may, as a valid

exercise of its police power, place limitations on the operation of motor vehicles on

the State's roads"); *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990) (upholding city ordinance that outlawed "cruising" indefinitely on public roads, despite the fact that it implicated due process right to "move freely about one's neighborhood or town," as appropriate time, place, manner type of restriction).

In fact, binding authority of this court holds that the City actually has the constitutional authority to adopt parking laws of general applicability. The Washington Constitution provides municipalities with police powers to protect health and safety: "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." WASH. CONST. art. XI, § 11. This is a broad delegation of power that mirrors the police powers of the state legislature. *See Detamore v. Hindley*, 83 Wash. 322, 326-27, 145 P. 462 (1915) (holding that local law "requires no legislative sanction for its exercise so long as the subject-matter is local, and the regulation reasonable and consistent with the general laws" (citing *Odd Fellows' Cemetery Ass'n v. City & County of San Francisco*, 140 Cal. 226, 73 P. 987 (1903)).

That broad delegation of power means that cities like Lacey are "authorized to enact vehicle and traffic regulations which are not in conflict with state laws." *Sandona v. City of Cle Elum*, 37 Wn.2d 831, 836, 226 P.2d 889 (1951) (citing

*Kimmel v. City of Spokane*, 7 Wn.2d 372, 109 P.2d 1069 (1941)). That state

constitutional grant of authority empowers cities to enact parking ordinances "to

keep traffic moving, to minimize congestion, and, at the same time, to afford users

of the highways an opportunity to transact business with the occupants of abutting

property." *Kimmel*, 7 Wn.2d at 377; *see also County Bd. of Arlington County v.

Richards*, 434 U.S. 5, 7, 98 S. Ct. 24, 54 L. Ed. 2d 4 (1977) ("A community may . .

. decide that restrictions on the flow of outside traffic into particular residential

areas would enhance the quality of life there by reducing noise, traffic hazards, and

litter.").

We have therefore consistently upheld such health and safety laws of general

applicability, including laws that limit driving and parking, against intrastate travel

challenges. *E.g.*, *State v. Scheffel*, 82 Wn.2d 872, 880, 514 P.2d 1052 (1973)

(upholding driver's license suspension statute against right to travel challenge

because "[t]here is no constitutional right to a particular mode of travel"); *City of

Spokane v. Port*, 43 Wn. App. 273, 275-76, 716 P.2d 945 (1986) (upholding

driver's license requirement against right to intrastate travel challenge because

privileges like driving are "always subject to . . . reasonable regulation and control

. . . under the police power" (citing *Scheffel*, 82 Wn.2d at 880)).

Many federal courts have addressed similar questions arising in other

states.  They generally come to the same conclusion: municipalities have the right to enact parking and driving laws of general applicability, even if they limit the ability of residents to use the streets. *E.g.*, *Lai v. N.Y.C. Gov't*, 991 F. Supp. 362, 366 (S.D.N.Y. 1998) ("[P]laintiff's *ability* to travel is limited by her physical condition and the shortage of on-street parking spaces in New York City, [but] her right to travel has not been abridged by the City's parking regulations."); *State v. French*, 77 Haw. 222, 231 n.9, 883 P.2d 644 (1994) (upholding conviction of violating traffic law against intrastate travel challenge; federal "right to travel is not a right to travel in any manner one wants, free of state regulation"); *cf. District of Columbia v. Smith*, 93 F.2d 650, 651 (D.C. Cir. 1937) ("The power to regulate the use of streets and highways by restrictions on the parking of vehicles is one universally recognized, and its reasonable exercise is consistently upheld.").

Potter has failed to show that Lacey's parking ordinance violates his asserted state constitutional right to reside in the manner that he has chosen.

CONCLUSION

Does the RV parking ordinance codified in LMC 10.14.020-.045 violate Potter's claimed Washington State constitutional right to intrastate travel? No. Potter has not established that his claimed constitutional right to travel intrastate, or

to not travel intrastate, or to reside, protects his preferred method of residing in

Lacey:  by siting his 23-foot trailer on a public street in violation of generally

applicable parking ordinances.

_____
Gordon McCloud, J.

WE CONCUR:

_____  _____
González, C.J.           Stephens, J.

_____  _____
Johnson, J.            Yu, J.

_____  _____
Madsen, J.           Montoya-Lewis, J.

_____  _____
Owens, J.            Whitener, J.