Rel: April 10, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

––––––––––––––––––––––

### SC-2025-0370

––––––––––––––––––––––

**The New York Times Company**

v.

**Kai Spears**

**Certified Questions from the United States District Court for the Northern District of Alabama**

**(Case No. 7:23-cv-00692-ACA)**

McCOOL, Justice.

Pursuant to Rule 18, Ala. R. App. P., the United States District Court for the Northern District of Alabama ("the district court") has certified two legal questions to this Court.  Those questions stem from an

action that Kai Spears has commenced in the district court against The New York Times Company ("The Times").

Facts and Procedural History

In the early morning hours of January 15, 2023, Jamea Harris was shot and killed during an exchange of gunfire in Tuscaloosa.  Harris's death received national media attention because three members of the University of Alabama's men's basketball team, including Darius Miles and Brandon Miller, were allegedly involved in the shooting.  Specifically, Miller, at the request of Miles, allegedly "br[ought] the gun that killed Harris to the scene of the shooting," and Miles then allegedly gave the gun to Michael Davis, who shot and killed Harris.  Miles and Davis were subsequently charged with capital murder.  Miller was present, in his car, when the shooting occurred, and another person associated with the basketball team was with Miller in his car.  It is now undisputed that that person was Cooper Lee, but, at all times relevant to this case, Lee's identity was unknown to the parties.

During the investigation into Harris's murder, a detective discovered that there was "an unidentified passenger in Miller's car" at the time of Harris's murder.  A confidential source later told Billy Witz,

a reporter with The Times, that Spears, another player on the basketball team, was the unidentified person in Miller's car. The parties refer to that confidential source as "Source A." A second confidential source, whom the parties refer to as "Source B," told Witz that "'someone with Alabama was in the car.'"

Given the information he received from Source A and Source B, Witz reached out to Spears to confirm whether he was in fact the unidentified person in Miller's car at the time of Harris's murder. However, Spears declined to comment because the University of Alabama had instructed the members of its men's basketball team not to speak to the media about Harris's murder. Witz then contacted Spears's father, "who unequivocally stated that his son was not the unidentified passenger" in Miller's car. Nevertheless, Witz told Spears's father that The Times planned to publish an article identifying Spears as the unidentified passenger in Miller's car unless Spears agreed to an interview, which Spears refused to do.

On March 15, 2023, at 8:10 p.m., The Times published an online article, authored by Witz, which stated that "[a] person familiar with the case," who had "spoke[n] on condition of anonymity," had identified

3

Spears as the unidentified passenger in Miller's car at the time of Harris's murder. The next day, The Times published Witz's article in its traditional newspaper. The following day, "Source B told Witz that he was 'likely wrong' that Spears was in the car with Miller," but, nevertheless, The Times "issued a statement that it … stood by its reporting."

In May 2023, Spears sued The Times in the district court, alleging that The Times had "fail[ed] to use reasonable care in publishing and disseminating untrue statements about his presence at a crime scene and publicizing highly offensive false statements despite harboring serious doubts as to the reliability of its source and/or the source's information." In conjunction with his complaint, Spears "has moved to compel the production of documents, to lift redactions on documents produced in response to his request for production, and to compel information redacted or withheld in The Times's responses to interrogatories." The Times has opposed Spears's discovery requests, arguing that § 12-21-142, Ala. Code 1975, provides it with a privilege to withhold the requested information. It is this dispute over discovery that led the district court to certify the two questions to this Court.

4

<u>Discussion</u>

The two certified questions both seek an answer regarding the scope of § 12-21-142 -- a type of statute that is commonly referred to around the country as a "shield statute." Section 12-21-142 states:

> "No person engaged in, connected with or employed on any newspaper, radio broadcasting station or television station, while engaged in a news-gathering capacity, shall be compelled to disclose in any legal proceeding or trial, before any court or before a grand jury of any court, before the presiding officer of any tribunal or his agent or agents or before any committee of the Legislature or elsewhere the sources of any information procured or obtained by him and published in the newspaper, broadcast by any broadcasting station, or televised by any television station on which he is engaged, connected with or employed."

For ease of reference, we will refer to the privilege afforded by § 12-21-142 as the "reporter's privilege," though the statute, as written, is not necessarily limited to people who are employed in that capacity.[1] Although our shield statute has existed since 1935, it does not appear that Alabama's appellate courts have yet been called upon to address it.

---

[1]Section 12-21-142 applies to any person who is "engaged in, connected with or employed on any newspaper, radio broadcasting station or television station, while engaged in a news-gathering capacity." In most instances, the people "engaged in a news-gathering capacity" will likely be reporters or journalists, but they need not necessarily be.

I. First Certified Question

The first question certified by the district court asks:

"Is the identity of a source, whose information is published
online by a corporation that also publishes a newspaper,
protected from compelled disclosure by a court?"

Although we initially accepted this certified question, we now decline to

answer it. See Stewart Title Guar. Co. v. Shelby Realty Holdings, LLC,

83 So. 3d 469 (Ala. 2011) (declining to answer a certified question that

the Court had initially accepted).

The first certified question seeks an answer regarding whether a

corporation that publishes a newspaper can be compelled to disclose the

identity of a source of information when the corporation publishes that

information in an online article, rather than in a traditional newspaper.

However, the answer to that question is irrelevant in this particular case.

Although The Times first published the information provided by Source

A in an online article, it is undisputed that The Times republished that

same information just hours later in its traditional newspaper.

Consequently, Spears has chosen to concede that § 12-21-142 protects the

identity of Source A. Indeed, Spears states in his brief to this Court that

he "made no argument to the district court, and does not intend to argue

to this Court, that [§ 12-21-142] would be inapplicable under these facts."

Spears's brief, p. 42. See also id., p. 9 ("Spears … conced[ed] that because

The Times had also published the defamatory article in print, [§ 12-21-

142] did apply [with respect to Source A's identity]."). Spears's concession

therefore makes the answer to the first certified question irrelevant in

this case -- a point The Times essentially conceded during oral arguments

before this Court.

> "In order for this Court to consider a certified question from a federal court, the question must be, among other things, 'determinative of [the underlying] cause.' Rule 18(a), Ala. R. App. P.; see Greene v. Massey, 384 So. 2d 24, 27-28 (Fla. 1980) (refusing to answer a certified question that would not be 'determinative of the cause'); Committee Comments, Rule 18, Ala. R. App. P. (noting that 'Rule 18 is based upon the Florida Appellate Rules, § 4.61 [now Fla. R. App. P. 9.150, which allows certification of a question if the "answer is determinative of the cause"]'). This requirement correctly leads us to view the question presented in its proper context, lest our answer resemble an opinion on an abstract point of law irrelevant to the underlying case. See, e.g., Smith v. Alabama Dry Dock & Shipbuilding Co., 293 Ala. 644, 651, 309 So. 2d 424, 429 (1975) (stating that '[i]t has long been the law of this State that courts will not decide moot, abstract or hypothetical questions')."

Palmore v. First Unum, 841 So. 2d 233, 235 (Ala. 2002) (emphasis added).

Thus, although we initially accepted the first certified question, we now

decline to answer it because doing so would not have any impact on the

7

proceedings pending in the district court.  See Stewart Title Guar. Co., 83 So. 3d at 472 (declining to answer a certified question because doing so would "necessitate [this Court's] fashioning a broad rule with the possibility that it would have no application to the particular facts presented").

In its certification order, the district court noted Spears's concession regarding the first certified question, but the court reasoned that "concessions of law are not binding on the court, so th[is] issue must be decided."  We have no dispute with the district court's conclusion that a party is not free to concede the answer to a legal question, but a party is free to choose which legal issues to raise, or, stated differently, is free to waive legal issues (other than jurisdictional issues).  In this case, Spears has not conceded the answer to the first certified question; indeed, he expressly states in his brief to this Court that he has "never conceded that [§ 12-21-142] applies to online articles."  Spears's brief, p. 42. Instead, Spears has conceded that the answer to the first certified question will have no bearing on this particular case because The Times also published Source A's information in its traditional newspaper.  In

8

other words, Spears chose to waive the legal issue raised by the first certified question, which he was free to do.

Before moving to the second certified question, we note that, although there is no dispute that the identity of Source A is protected by § 12-21-142, there is a dispute regarding whether the identity of Source B is protected by the statute. That dispute exists because the parties disagree regarding whether the information provided by Source B was "published in the newspaper." Id. In short, The Times argues that Source B's identity is protected by the statute because, it says, the information that he or she gave to Witz "provided 'partial confirmation'" of the information provided by Source A. The Times's reply brief, p. 39. Spears argues in response that only one source is mentioned in The Times's article, which is undisputedly Source A, and that, as a result, Source B's information, even if it confirmed or corroborated Source A's information, was not actually published by The Times.

However, answering the first certified question would not resolve the parties' dispute over Source B's anonymity. It is true that this Court may rephrase a certified question "in order to address the 'basic issue implicated by th[e] question,'" Holcim (US), Inc. v. Ohio Cas. Ins. Co., 38

9

So. 3d 722, 726 (Ala. 2009) (citation omitted), but the basic issue implicated by the first certified question is simply whether § 12-21-142 applies to online publications by a newspaper, not whether information that confirms or corroborates published information is protected by the statute. This Court will not create an altogether new certified question under the guise of "rephrasing" the question actually certified by the district court.[2] See Allen v. Dameron, 187 Wash. 2d 692, 702, 389 P.3d 487, 491 (2017) (declining to "reformulate the certified questions" because doing so would have actually resulted in "the court … answer[ing] a completely different question"); Potter v. City of Lacey, 3 Wash. 3d 328, 331 n.1, 550 P.3d 1037, 1039 n.1 (2024) ("'[W]e have the authority to reformulate certified questions,'" but "we generally decline to answer a question that is completely different from the one posed by the federal court." (citation omitted)); and Hampton v. City of Chicago,

---

[2]Moreover, we note that the parties do not suggest that we should resolve the dispute regarding Source B's anonymity. In fact, The Times is adamant that we should not resolve that dispute because it has not been presented to this Court via a certified question from the district court, and, although Spears has provided a brief argument on the issue, he states that he has done so only because he is "unsure whether the issue regarding the identity of Source B is appropriate for this Court's review given the specific framing of the certified questions." Spears's brief, p. 68.

248 N.E.3d 553, 557, 478 Ill. Dec. 928, 932 (2024) ("The appellate court may limit or rephrase a certified question, though review is generally confined to the issue presented in the certified question."). Rather, if the district court feels that any additional certified questions are necessary, it may submit them to this Court pursuant to Rule 18. See Heatherwood Holdings, LLC v. First Com. Bank, 61 So. 3d 1012, 1026 (Ala. 2010) (noting, after declining to answer two certified questions, that the certifying court could "submit any remaining questions to this Court under Rule 18").

## II. Second Certified Question

The second question certified by the district court asks:

> "Does the Shield Statute protect any and all information that could lead to the identification of a source whose identity is protected from compelled disclosure under Alabama's Shield Statute?"

During oral arguments before this Court, The Times suggested that the second certified question should be rephrased to add "reasonably" after "could." We agree and rephrase the question as follows:

> "Does the Shield Statute protect any and all information that could reasonably lead to the identification of a source whose identity is protected from compelled disclosure under Alabama's Shield Statute?"

11

See Holcim, 38 So. 3d at 726 (noting that this Court may rephrase a certified question "in order to address the 'basic issue implicated by th[e] question'" (citation omitted)).

The Times argues that § 12-21-142 "provides an absolute privilege against the disclosure of both a confidential source's name and also other information that could reasonably lead to the identification of the source." The Times's brief, p. 21 (emphasis in original). In support of its interpretation, The Times argues that "the privilege would be meaningless if it did not protect contact information, personal data, or descriptive details that, individually or in combination, would narrow the pool of potential sources to the point where their identity could be discerned." Id., pp. 21-22. Spears argues in response that § 12-21-142 must be interpreted strictly and narrowly and therefore "does not extend to 'any and all information'" that "'could' ultimately 'lead to the identification' of the source." Spears's brief, p. 43. Thus, the issue before this Court is one of statutory interpretation.

Our interpretation of § 12-21-142 is governed by the following principles:

> "'"The cardinal rule of statutory interpretation is to determine and give effect to the

intent of the [L]egislature as manifested in the language of the statute. <u>Gholston v. State</u>, 620 So. 2d 719 (Ala. 1993). Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says."

"'<u>Ex parte State Dep't of Revenue</u>, 683 So. 2d 980, 983 (Ala. 1996). "'"If a statute is not ambiguous or unclear, the courts are not authorized to indulge in conjecture as to the intent of the Legislature or to look to consequences of the interpretation of the law as written."'" <u>Ex parte Morris</u>, 999 So. 2d 932, 938 (Ala. 2008) (quoting <u>Gray v. Gray</u>, 947 So. 2d 1045, 1050 (Ala. 2006), quoting in turn <u>Ex parte Presse</u>, 554 So. 2d 406, 411 (Ala. 1989)).'"

<u>Swindle v. Remington</u>, 291 So. 3d 439, 457 (Ala. 2019) (quoting <u>Slagle v. Ross</u>, 125 So. 3d 117, 123 (Ala. 2012)). Rather,

"'it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.'"

<u>Ex parte Pfizer, Inc.</u>, 746 So. 2d 960, 964 (Ala. 1999) (citation omitted).

In addition, "[a]t common law, a reporter did not have a privilege to withhold the identity of a confidential source of information, and a court could compel disclosure in proceedings before a court, grand jury,

13

or other governmental body." <u>Price v. Time, Inc.</u>, 416 F.3d 1327, 1342 (11th Cir. 2005) (citing <u>Branzburg v. Hayes</u>, 408 U.S. 665, 685 (1972)). Section 12-21-142, on the other hand, expressly provides a reporter's privilege and has therefore modified the common law. That fact is significant to our analysis because this Court has previously explained that "'[s]tatutes in derogation or modification of the common law are strictly construed' and are 'presumed not to alter the common law in any way not <u>expressly</u> declared.'" <u>State v. Grant</u>, 378 So. 3d 576, 580 (Ala. 2022) (citation omitted). Thus, we must interpret § 12-21-142 strictly so as not to intrude upon the common law any further than the Alabama Legislature expressly did with the language of the statute. <u>See</u> <u>Grant</u>, 378 So. 3d at 581 (noting that "'statutes are construed in reference to the principles of the common law; and it is not to be presumed that there is an intention to modify, or to abrogate it, further than may be expressed'" (citation omitted)). Furthermore, whether in derogation of the common law or not, privileges against disclosure are "'in derogation of the search for truth'" and, as a result, should be "narrowly construe[d]." <u>Ex parte</u> <u>Mardis</u>, 628 So. 2d 605, 607 (Ala. 1993) (citation omitted). <u>See also</u> <u>United States v. Nixon</u>, 418 U.S. 683, 710 (1974) (noting that privileges

14

against disclosure are not "expansively construed, for they are in derogation of the search for truth").

With these principles of statutory interpretation in mind, we turn to the language of § 12-21-142. As noted, that statute provides certain people with a privilege to withhold, i.e., they cannot be compelled to disclose, "the sources of any information … published in the newspaper." At the risk of stating the obvious, we hold that this language clearly authorizes any such person to withhold the name of any such source. We further hold that, to achieve that end, this language also necessarily protects any information that would <u>inevitably</u> reveal the identity of a confidential source because the disclosure of such information would, for all intents and purposes, be equivalent to disclosing the source's name. <u>See</u> <u>Black's Law Dictionary</u> 925 (12th ed. 2024) (defining "inevitable" as "[c]ertain to occur; impossible to prevent or avoid"). By way of example only, such "source-identifying" information might typically include, but is not necessarily limited to, a source's residential address, telephone number, email address, and social-media accounts. Indeed, although his concession is not controlling, we note that Spears has conceded that § 12-21-142 protects such "source-identifying" information.

15

To be clear, by holding that § 12-21-142 protects any information that would inevitably reveal the identity of a confidential source, we do not mean to imply that it will always be readily apparent whether certain information meets this standard. "Inevitable" is not the same as "obvious," and, in cases in which a dispute arises, it will be the trial court that is best suited to sort things out. In some instances, it will be obvious from the face of the information that its disclosure would inevitably reveal the identity of a confidential source. In other instances, the information, when considered in a vacuum, might not appear to be information that would inevitably reveal the identity of a confidential source, but, when that information is considered in the context of the specific case or is combined with other information, it might become apparent that disclosure would inevitably reveal the identity of the source. As with other privileges, the one claiming the reporter's privilege bears the burden of demonstrating that the disclosure of certain information would inevitably reveal the identity of a confidential source, Ex parte Tucker, 66 So. 3d 750, 753 (Ala. 2011), and trial courts are fully capable of resolving such questions, which will necessarily be fact-driven. See Lynch v. Hamrick, 968 So. 2d 11, 14 (Ala. 2007) (noting that

16

questions regarding a privilege are "'"question[s] of fact to be determined by the trial court from the evidence presented"'" (citations omitted)).

With that said, the question posed by the second certified question, as rephrased, is whether § 12-21-142 protects "any and all information that could reasonably lead to the identification of a source whose identity is protected from compelled disclosure." (Emphasis added.) Thus, the real issue that this Court must decide is whether the reporter's privilege extends beyond information that would inevitably reveal the identity of a confidential source. For reasons we will provide, we hold that the reporter's privilege does not extend that far, and, thus, we answer this question in the negative.

By its plain language, § 12-21-142 protects only "sources of ... information," which, in its strictest and narrowest sense, does not protect "any and all information" that, in the hands of a resourceful recipient, "could reasonably lead" to the discovery of the identity of a confidential source. (Emphasis added.) Indeed, information that could lead to the discovery of the identity of a confidential source will not necessarily do so. Thus, if we were to interpret § 12-21-142 as broadly as The Times does, we would risk creating protection for information that the statute,

on its face, does not protect. And, if the Legislature had wanted § 12-21-142 to provide such broad protection, it "knew how to draft a statute to reach that end" and could have easily done so. Ex parte Jackson, 614 So. 2d 405, 407 (Ala. 1993).

In fact, we note that several other jurisdictions have shield statutes that expressly protect not only the identity of a confidential source but also any information that could potentially lead to the discovery of the identity of the source. For example, Delaware's shield statute protects any information that "would substantially increase the likelihood that [a] source of … information will be discovered." Del. Code Ann. tit. 10, § 4323(a) (emphasis added). Hawaii's shield statute goes a little further, providing protection for any "information that could reasonably be expected to lead to the discovery of the identity of the source." Haw. Rev. Stat. § 621-31(a)(1) (emphasis added). Maine's shield statute is even broader, protecting "[a]ny information that could be used to identify a confidential source." Me. Stat. tit. 16, § 61.1.B. (emphasis added). Connecticut (Conn. Gen. Stat. § 52-146t(b)), Washington (Wash. Rev. Code § 5.68.010(1)(a)), and Wisconsin (Wis. Stat. § 885.14(2)2.) all have shield statutes that protect any information that "would tend to" reveal

18

the identity of a confidential source, which at least arguably provides a basis for interpreting the statutes broadly. See Republic of Kazakhstan v. Does 1-100, 192 Wash. App. 773, 786, 368 P.3d 524, 530 (2016) ("declin[ing] to read [Washington's shield statute] … narrowly," based on the fact that the statute "protects against the disclosure of any information that would tend to identify a source" -- language that the court interpreted as being "very broad").

These shield statutes from other jurisdictions demonstrate the ease with which our Legislature could have drafted § 12-21-142 with language that protects any information that "could reasonably lead" to the discovery of the identity of a confidential source. Indeed, Hawaii's shield statute uses almost that exact language. However, the Legislature did not use such language in § 12-21-142, and this Court has previously explained that "'"[i]t is not proper for [this Court] to read into [a] statute something which the [L]egislature did not include although it could have easily done so."'" State v. Blane, 985 So. 2d 384, 387 (Ala. 2007) (citations omitted). "Rather, th[is] Court 'will presume more modestly' that 'the [L]egislature says what it means and means what it says,'" Oklahoma v. Castro-Huerta, 597 U.S. 629, 642 (2022) (citation omitted),

and "we presume that the Legislature specifically chose each word" -- or did not choose certain words -- "for a reason." Scott v. Alabama Dep't of Revenue, [Ms. SC-2025-0013, June 13, 2025] \_\_\_ So. 3d \_\_\_, \_\_\_ (Ala. 2025). In other words, this Court is duty-bound "to give effect to [§ 12-21-142] exactly as it is written," Tolar Constr., LLC v. Kean Elec. Co., 944 So. 2d 138, 152 (Ala. 2006) (emphasis added), and, as written, § 12-21-142 provides a privilege to withhold only "the sources of any information ... published in the newspaper." (Emphasis added.) Construed strictly and narrowly, that language protects only information that would inevitably reveal the identity of a confidential source, not "any and all information" that "could reasonably lead" to the discovery of the identity of the source. (Emphasis added.)

We acknowledge The Times's argument that courts in some jurisdictions have held that the shield statutes in those jurisdictions protect any information that "could" or "may" lead to the discovery of the identity of a confidential source, despite the fact that those statutes do not contain the type of language found in the shield statutes cited above. See, e.g., Castellani v. Scranton Times, L.P., 598 Pa. 283, 310, 956 A.2d 937, 954 (2008) (holding that Pennsylvania's shield statute "prohibits the

20

compelled disclosure of a confidential source's identity, or any information which <u>could</u> expose the source's identity" (emphasis added)); <u>Rosato v. Superior Ct. of Fresno Cnty.</u>, 51 Cal. App. 3d 190, 218, 124 Cal. Rptr. 427, 445 (1975) (holding that California's shield statute "extends not only to the identity of the source but to the disclosure of any information, in whatever form, which <u>may</u> tend to reveal the source of the information" (emphasis added)); <u>In re April 7, 1999 Grand Jury Proceedings</u>, 140 Ohio App. 3d 755, 763, 749 N.E.2d 325, 332 (2000) (holding that Ohio's shield statute protected information that "<u>could very likely</u> have led to appellant's source" (emphasis added)); and <u>Tavoulareas v. Piro</u>, 93 F.R.D. 35, 39, 40 (D.D.C. 1981) (holding that the District of Columbia's shield statute protects information that "<u>may</u> lead plaintiffs to confidential sources" and that disclosure is therefore not required if the information sought will "<u>seriously threaten</u> to divulge a source" (emphasis added)). According to The Times, the caselaw from those jurisdictions provides a useful guide for this Court's interpretation of § 12-21-142, and it urges us to follow suit.

As a threshold matter, we find the Pennsylvania and California caselaw to be of little relevance here because the courts of those

jurisdictions have expressly stated that they interpret their respective shield statutes liberally and broadly, whereas we are interpreting § 12-21-142 strictly and narrowly. See In re Taylor, 412 Pa. 32, 40, 193 A.2d 181, 185 (1963) (holding that Pennsylvania's shield statute "must be liberally construed in favor of the newspapers"); and Rosato, 51 Cal. App. 3d at 217, 124 Cal. Rptr. at 445 (holding that California's shield statute must "be given a broad rather than narrow construction"). More significantly, though, this Court's role is to give effect to the intent of the Legislature as expressed in the language of § 12-21-142. Regardless of how courts in other jurisdictions have interpreted the shield statutes in those jurisdictions, nothing in the plain language of § 12-21-142 reflects an intent by the Legislature to protect any information that "could reasonably lead" to the discovery of the identity of a confidential source.[3]

---

[3]To be clear, when we speak of the Legislature's intent, we are concerned only with its intent as expressed in the language of § 12-21-142. We are not concerned with the subjective intent of individual legislators when they enacted § 12-21-142, i.e., what any individual legislators thought the statute would cover. "'[W]ords and text are chosen to embody intentions and thus replace inquiries into subjective mental states. ... [T]he text is the intention of the authors or of the framers.'" Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, Introduction p. 30 n.97 (Thomson/West 2012) (quoting Charles Fried, Sonnet LVX and the "Black Ink" of the Framers' Intention, 100 Harv. L. Rev. 751, 759 (1987)).

And, as we have already explained, if the Legislature had wanted to provide such broad protection, it could have easily drafted § 12-21-142 to that effect, just as the legislatures in other jurisdictions have done.

We also acknowledge The Times's argument that public-policy considerations favor a broader interpretation of § 12-21-142. Perhaps they do and perhaps they do not, but that is not a question for this Court to decide. "[I]t is well established that the [L]egislature, and not this Court, has the exclusive domain to formulate public policy in Alabama," Boles v. Parris, 952 So. 2d 364, 367 (Ala. 2006), and "'it is our job to say what the law is, not to say what it should be.'" Ex parte Pfizer, 746 So. 2d at 964 (emphasis added; citation omitted). Thus, if public-policy considerations do favor a broader reporter's privilege -- and we are not suggesting either that they do or do not -- the appropriate place for The Times to raise that argument is with the Legislature.[4]

_____

[4]As a final point, we are not persuaded by The Times's attempt to draw a parallel between the reporter's privilege and the government's privilege to withhold the identity of a confidential informant who has assisted in the investigation of criminal activity. See Rule 509(a), Ala. R. Evid. (providing that the government "has a privilege to refuse to disclose the identity of a person who has furnished to a law enforcement officer information relating to or assisting in an investigation of a possible violation of law"). Citing Ex parte Pugh, 493 So. 2d 393 (Ala. 1986), The Times contends that this Court has "extend[ed] the [confidential-

\* \* \* \* \*

For the foregoing reasons, the short answer to the second certified question, as rephrased, is "no" -- § 12-21-142 does not "protect any and all information that could reasonably lead to the identification of a source whose identity is protected from compelled disclosure." Rather, the plain language of § 12-21-142 provides that the reporter's privilege protects only "the sources of any information … published in the newspaper," and we therefore hold that this privilege applies only to information that would <u>inevitably</u> reveal the identity of a confidential source. That is the holding that most narrowly intrudes upon the common law and is the only holding that this Court can without question say does not go beyond the intent of the Legislature as expressed in the language of § 12-21-142.

FIRST QUESTION DECLINED; SECOND QUESTION ANSWERED.

Stewart, C.J., and Wise, Bryan, Cook, and Parker, JJ., concur.

_____

informant] privilege both to the informant's name and to other information that would 'tend to' identify them." The Times's brief, p. 61 (quoting <u>Ex parte Pugh</u>, 493 So. 2d at 394). However, we do not read <u>Ex parte Pugh</u> as establishing that principle, and, even if it did, we fail to see why that holding would apply here because we are interpreting the language used by the Legislature in § 12-21-142, not the language used by this Court in Rule 509.

Shaw, J., concurs in part and concurs in the result, with opinion, which Sellers, J., joins.

Mendheim, J., dissents, with opinion.

SHAW, Justice (concurring in part and concurring in the result).

"In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature." DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So. 2d 270, 275 (Ala. 1998). "If the language of a statute is not 'plain' or is ambiguous, then -- and only then -- may a court construe or interpret it to determine the legislature's intent." Deutsche Bank Nat'l Tr. Co. v. Walker Cnty., 292 So. 3d 317, 326 (Ala. 2019).

I agree with the main opinion that the plain language of § 12-21-142, Ala. Code 1975, "does not 'protect any and all information that could reasonably lead to the identification of a source whose identity is protected from compelled disclosure.'" ___ So. 3d at ___. Reading the statute in such a way "would risk creating protection for information that the statute, on its face, does not protect." ___ So. 3d at ___. I concur in the main opinion to that extent. However, I would arrive at this conclusion by a different analysis. See Ex parte Ankrom, 152 So. 3d 397, 431 (Ala. 2013) (Shaw, J., concurring in part and concurring in the result) (noting that, when "[t]he language of [a] Code section is clear[,] there is

26

nothing to construe [and] no need to attempt to divine the 'intent' of the legislature").  As to the remainder of the opinion, I concur in the result.

Sellers, J., concurs.

MENDHEIM, Justice (dissenting).

The parties' discovery dispute concerns the extent to which Ala. Code 1975, § 12-21-142, might protect "source-identifying information," a phrase that does not appear in that statute. The certification order entered by United States District Court Judge Annemarie Carney Axon proposed the following certified questions to this Court regarding § 12-21-142:

> "(1) Is the identity of a source, whose information is published online by a corporation that also publishes a newspaper, protected from compelled disclosure by a court?

> "Assuming the first question is answered affirmatively, the court certifies this question:

> "(2) Does [§ 12-21-142] protect any and all information that could lead to the identification of a source whose identity is protected from compelled disclosure under [that statute]?"

According to the main opinion, Kai Spears waived the legal issue raised by the first certified question and, "although we initially accepted the first certified question, we now decline to answer it because doing so would not have any impact on the proceedings pending in the district court." __ So. 3d at __.

28

Judge Axon was aware of the legal issues and of the arguments of Spears and The New York Times Company when she certified her questions. Judge Axon stated that, "consistent with Alabama precedent requiring the party asserting an evidentiary privilege to bear the burden of establishing the privilege applies," she had "ordered supplemental briefing on an issue Mr. Spears did not raise: whether Alabama's Shield Statute protects the identity of sources whose information is published by a newspaper on its website." Judge Axon further rejected the New York Times's argument that Spears had waived the issue whether the fact of online publication was pertinent by conceding that physical publication in the newspaper also had occurred. In her view of the pertinent privilege law and its application, the fact of separate publications, one occurring online and another occurring in physical print, mattered to how she should decide the privilege issue.

Judge Axon did not certify an issue to this Court regarding whether waiver had occurred or whether waiver was pertinent to what she must decide. She had already decided those issues before certifying the two questions to this Court. After accepting both questions, this Court now expresses disagreement with Judge Axon's decisions as to waiver issues

she has not certified, declines to answer the first certified question on that basis, and proceeds to answer the second certified question that was expressly conditioned on the "[a]ssum[ption] the first question is answered affirmatively."  However, Judge Axon did not unconditionally certify the second question to this Court.  She sought this Court's opinion on the second question only if we affirmed that "the identity of a source, whose information is published online by a corporation that also publishes a newspaper, [is] protected from compelled disclosure by a court," an issue that this Court has declined to answer.

Rule 18, Ala. R. App. P., provides for answering certified questions when our answers to such questions would be

> " 'determinative of [the underlying] cause.' Rule 18(a), Ala. R. App. P.; see Greene v. Massey, 384 So. 2d 24, 27-28 (Fla. 1980) (refusing to answer a certified question that would not be 'determinative of the cause'); Committee Comments, Rule 18, Ala. R. App. P. (noting that 'Rule 18 is based upon the Florida Appellate Rules, § 4.61 [now Fla. R. App. P. 9.150, which allows certification of a question if the "answer is determinative of the cause"]')."

Palmore v. First Unum, 841 So. 2d 233, 235 (Ala. 2002).

Our principles of statutory construction are well settled.  See, e.g., IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992).  The privilege in § 12-21-142 applies to protect from disclosure "the

30

sources of any information procured or obtained by [the person connected with the newspaper] and published in the newspaper." Apart from any consideration of the issue whether an online publication by a newspaper would qualify for the privilege, the pertinent language used in § 12-21-142 is not ambiguous and requires no clarification from this Court. Price v. Time, Inc., 416 F.3d 1327 (11th Cir. 2005) (addressing the plain meaning of § 12-21-142, noting that "[t]he use of the term 'newspaper' is not ambiguous, 416 F.3d at 1342, and stating that "[t]here are some meanings so plain that no further discussion should be necessary, but sometimes judges and lawyers act like lay lexicographers, love logomachy, and lean to logorrhea," id. at 1336.);[5] see also McCall v. Automatic Voting Mach. Corp., 236 Ala. 10, 13, 180 So. 695, 697 (1938) (noting that even when courts are attempting to adopt a construction of a statute that would be constitutional, they "are not at liberty … to read into it and interpolate words which do not appear in the language enacted by the Legislature" (emphasis omitted)).

---

[5]Price was modified on rehearing, see Price v. Time, Inc., 425 F.3d 1292 (11th Cir. 2005), but the modification is not pertinent in this case.

31

Judge Axon made her decisions as to waiver and framed her certified questions accordingly. After reviewing the parties' submissions and in light of the plain language of § 12-21-142, I am not convinced that this Court can provide an answer that would be determinative of the cause, especially in light of the limited information provided regarding the disputed discovery issues, see Ex parte Affinity Hosp., LLC, 414 So. 3d 95, 98-99 (Ala. 2024) (discussing the fact-intensive nature of discovery issues when a statutory privilege is asserted), and the remaining issues regarding the application of the reporter's privilege under the First Amendment to the United States Constitution, which the Times also asserted.[6]

Accordingly, I respectfully dissent.

---

[6]Section 12-21-142 privileges against disclosure only "the sources of any information procured or obtained." Based on the narrow parameters of that section, it is unclear to me that Spears cannot obtain through discovery whatever information he might be seeking, particularly within the framework applicable to the qualified constitutional privilege for reporters, to the extent that might be applicable. See Herbert v. Lando, 441 U.S. 153, 175-77 (1979); United States v. Capers, 708 F.3d 1286, 1303 (11th Cir. 2013) (describing the circumstances under which a court might compel disclosure of information protected by the constitutional privilege).